TANNER *vs.* LIVINGSTON.

Where a testator devised a tract of land to a son and to the wife of such son, *habendum* unto them, and the survivor of them, *for and during their natural lives*, and, by a subsequent clause, devised the same premises, from and immediately after the decease of the son and wife, unto *their heirs male*, HABENDUM unto such heirs male, and to *their heirs and assigns forever*, *share and share alike*, IT WAS HELD, that the son of the testator and his wife took *estates for life*, and that their *heirs male*, living at the death of the testator, took a *vested remainder in fee*, which opened to let in after born children.

And where such son of the testator and his wife sold and conveyed part of the premises devised, and covenanted that they were *seized of an absolute estate of inheritance in fee simple* in the premises, *it was held*, in an action of covenant *for breach of the covenant of seisin*, that such action might be sustained.

But it *was further held*, that the purchaser, having entered into possession of the premises conveyed, and occupied and enjoyed the same from the date of his conveyance, was not entitled to recover the full amount of the *consideration money* paid on the purchase, and that the defendant might show the *value of the life estates* for the purpose of regulating the amount of the recovery.

It was *further held*, that a direction to pay the debts of the testator did not give a *fee by implication*, there being an *express limitation* of an estate for life; and also because it manifestly appeared from the will that the charge of the debts was not in respect to the estate devised, but in consequence of the indebtedness of the devisee to the testator for advances made and responsibilities assumed.

So, also, a direction to pay off and satisfy a certain mortgage executed by the testator, was held not to give a fee by implication, the testator, in case of the neglect or refusal of the devisee, having directed and authorized his executors to sell a portion of the devised premises, and from the proceeds to satisfy the mortgage, paying over the surplus monies, if any, to the devisee.

THIS was an action for the breach of the *covenant of seisin* in a deed of lands, tried at the Columbia circuit in November, 1831, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The plaintiff read in evidence a deed to him from the defendant and his wife, bearing date 6th May, 1830, conveying, for the consideration of $4300, two tracts of land containing together 357 acres, and proved that the premises conveyed were situate in that part of the manor of Livingston which fell

NEW-YORK, to the share of, and was owned by *John Livingston*, the father
May, 1834. of the plaintiff, who, in his lifetime, claimed to be the owner
Tanner thereof; and that *John Livingston* died in October, 1822, leav-
v. ing several children, of whom the defendant was one; and
Livingston. also several grand-children. On the part of the defendant,
the will of *John Livingston* was read in evidence, bearing
date 19th April, 1822; by it the testator devised to the de-
fendant, Robert Le Roy Livingston and Anna Maria his wife,
a certain tract of land, of which the premises conveyed by
the deed declared on, are a part, with an *habendum* in these
words: "To have and to hold the same unto my son Robert
Le Roy and Maria his wife, and the survivor of them, for
and during their natural lives, with the right and privilege,
however, to my said son Robert Le Roy and Maria his wife,
and the survivor of them, and I hereby authorize and em-
power them and the survivor of them to sell, execute and de-
liver leases for the whole, or any part of the above mentioned,
or intended to be devised premises, for the term of two lives,
reserving an annual rent upon the part so to be disposed of,
not less than fifteen bushels of merchantable wheat to every
one hundred acres." The testator then stated that he had given,
or might thereafter give contracts for executing leases for cer-
tain parts of the tract devised to his son Robert Le Roy and
Anna Maria his wife, and after doing so, ordered and di-
rected his son Robert Le Roy and Maria his wife, and their
*heirs male*, to carry such contracts into full and complete ef-
fect; but the money which should be due on such contracts,
he declared should be deemed personal property, and di-
rected it to be paid to his son *Herman*. The will then
proceeds as follows: "Item. From and immediately after the
decease of my said son Robert Le Roy and Maria his wife,
I give, devise and bequeath unto *their heirs male*, all that
part of that certain tract, &c. (describing the same pre-
mises specified in the devise to Robert Le Roy and Anna
Maria his wife.) and the reversion and reversions, remain-
der and remainders, rents, issues and profits thereof, as well
those which shall be due thereon at the time of the de-
cease of my said son Robert Le Roy and Maria his wife, as
those which shall thereafter become due thereon and issue

out of the same, &c.  *To have and to hold* the same unto the said *heirs male* of my son Robert Le Roy and Maria his wife and to their *heirs* and assigns *forever, share and share alike.*" The testator then proceeds to state that a certain farm, which he had purchased of one Henry Kiefer, fell within the devise made to his son Robert Le Roy and Maria his wife ; and that, to raise the purchase money of such farm, he had borrowed from an insurance company the sum of $8000, to secure the payment of which, he had executed a mortgage of certain lands devised to his son *Henry ;* and after such statement, the testator directs that the amount of money which may be due at his decease on that mortgage shall be paid by his son *Robert Le Roy :* and in case of his neglect or refusal to pay, he directs, and for that purpose authorizes and empowers his executors to sell the farm so purchased by him, and from the proceeds pay the amount due on the mortgage, and pay over the surplus, if any, to his son Robert Le Roy. The testator also, after reciting that he had made large advances to, and for his son Robert Le Roy, and that he was bound as surety for him, orders and directs that all the debts which he may owe at the time of his decease, as well as those for which he was surety for his son Robert Le Roy, except as in the will before mentioned, shall be paid by his son Robert Le Roy, and that he shall *repay* so much of the monies advanced, or to be advanced or paid by the testator, as surety for him, as shall be sufficient for that purpose ; and the residue of such advances or monies paid by the testator as surety as aforesaid, after paying the debts of the testator and the monies for which the testator was bound as surety, the testator gave and bequeathed unto his son Robert Le Roy and his heirs.  In the will, also, was contained a devise and bequest by the testator to his son *Herman* of all the rent, residue and remainder of his estate, both real and personal wheresoever the same might be situate, and of whatsoever nature the same might be, " to have and to hold the same unto my said son Herman, his heirs and assigns forever."  On the part of the defendant, was also read in evidence a deed from him and his wife to *Walter Patterson,* bearing date 11th February, 1823, conveying the premises specified in the devise to Rob-

NEW-YORK,
May, 1834.

Tanner
v.
Livingston.

NEW-YORK, ert Le Roy Livingston and Anna Maria his wife; and a deed
May, 1834. back from *Walter Patterson*, to Robert Le Roy Livingston of
Tanner    the same premises, bearing date on the same day as the last
v.       mentioned deed. It was admitted, that at the time of the death
Livingston. of John Livingston, the testator, there were living *three sons*
and *three daughters* of Robert Le Roy Livingston, and that
since the death of John Livingston, there were *three other sons*
and *one daughter* born, the children of Robert Le Roy Liv-
ingston. It was also admitted, that since the 6th day of
May, *1830*, the date of the deed declared on, the plaintiff
had been in possession, and had the exclusive occupation and
enjoyment of the premises thereby conveyed.

The counsel for the defendant insisted that the evidence
thus given, was sufficient to show that Robert Le Roy Liv-
ingston and Anna Maria his wife were seised of an estate in
fee in the premises in question at the time of the execution
and delivery of the deed declared on, and prayed the presid-
ing judge to instruct the jury that the defendant was entitled
to a verdict; but the judge charged the jury that the defend-
ant and his wife were not so seised of an estate in fee in the
premises, and that the evidence was not sufficient to bar the
plaintiff's recovery; and that the plaintiff was entitled to a
verdict in his favor for the sum of $4300, the amount of the
consideration money specified in the deed, but that he was
not entitled to recover *interest* on the consideration money.
The counsel for the defendant then offered to prove the *value
of the life estates* of the defendant and of his wife in the prem-
ises, for the purpose of reducing the amount of the recovery;
which evidence being objected to by the plaintiff, was exclud-
ed by the judge. The jury found a verdict for the plaintiff
for the sum of $4300. The defendant's counsel having ex-
cepted to the several decisions against the defendant, made
by the judge, and obtained a bill of exceptions duly sealed,
now moved for a new trial.

*C. Bushnell*, for the defendant, insisted that by the will of
John Livingston, an estate of inheritance in fee simple passed
to the defendant and his wife, which vested immediately up-
on the death of the testator; that it was manifest that the

testator intended that such estate should vest in them, and that in no event, or on any contingency, should it pass to his residuary legatee, or revert to his heirs at law, and that such *general intent* of the testator must be carried into effect if consistent with the rules of law ; that the testator used the word *heirs* in its *general legal sense*, as descriptive of a *class* or *denomination* of persons, and not as designating *particular individuals*, to wit, the *sons* of Robert Le Roy and Maria his wife ; that the law will not admit of the presumption or inference that by the words *heirs male* the testator intended to designate particular individuals, instead of a class of persons : that there are no words in the will showing that the testator meant, by the word *heirs,* to designate the *children* of the defendant and his wife, and that it would be a violation of the *general intent* of the testator and of the rules of law so to construe the will, which must be construed according to the technical signification of the words, unless, by relation to other words of the will, they are shown to be used in a popular sense : 1 Prest. on Est. 365, 381 ; 2 Ves. 225 ; 5 Bro. Parl. Cas. 278 : 2 Black. R. 698 ; 1 Bro. Ch. R. 206, 16, 17, 19 ; 4 Kent's Comm. 228 ; that the word *heirs,* in the will of the testator, means all the heirs of a given description—a class of inheritable persons, taking in the *character* of heirs, and in a *legal course of descent* from Robert Le Roy and wife, and that this case came directly within the rule in *Shelly's case,* 1 Coke, 104, that " where the ancestor takes an estate of freehold by any gift or conveyance, and in the same gift or conveyance there is a limitation, either mediate or immediate, to *his heirs* or the *heirs of his body,* the word *heirs* is a word of *limitation* of the estate, and not of *purchase ;*" or, as expressed by Preston, in his Treatise on Estates, vol. 1, p. 265 : " If in any instrument a freehold be limited to the ancestor for *life,* and the *inheritance* to his heirs either mediately or immediately, the first taker takes the *whole estate :* if it be limited to the *heirs of his body,* a fee tail; if to *his heirs,* a fee simple ;" or, as in the notes of the revisors of the laws of this state : " the ancestor takes the *whole estate,* and the *heirs,* if they take at all, can take only by *descent.*" The rule in *Shelly's case* prevailed in this state until abrogated by the revised statutes, which went into operation in 1830,

NEW-YORK,
May, 1834.

Tanner
v.
Livingston.

2 R. S. 725, § 28 : 4 Kent's Comm. 231, 2 ; and all the requisites of that rule existing here, the estate of freehold (viz. the estate for life) given to the ancestors, attracted to the ancestors the estate imported by the limitation to the heirs. 1 Preston on Estates, 290, 294, 263, 269, 317. Fearne on Rem. 30. 1 Inst. 22, b. *Perrin* v. *Blake*, 4 Burr. 2579, Sergeant Glynn, arg. 1 Black. R. 672. 4 Kent's Comm. 216, 17. The rule applies, though the limitation be to the heirs as *tenants in common*, or that they are to hold *share and share alike ;* and the ancestors may take the freehold as *joint tenants*, and the inheritance as *tenants in common*. 1 Preston on Estates, 329, 367, 373, 374. 9 Modern R. 292. 1 Inst. 182, a. 7 T. R. 531. Ambler, 379. 3 East, 548. A freehold to a husband and wife *for life*, and a limitation to their *heirs*, &c. will give them the inheritance jointly. 1 Preston, 335, 6. 2 Black. Rep. 1211. Comyn's Dig., Estates, K. 1. So a devise to N. for life, and after his decease, unto the *heirs males* of the body of the said N. and his heirs forever, gives an *estate tail*. Strange, 729. 2 Ld. Raym. 1437. 5 Burr. 2609. 2 Black. R. 696. 1 Preston, 347, 383. A gift to a man and his *heirs, male* or *female* is an estate in fee simple, and not in fee tail ; for there are no words to ascertain the *body out of which* they shall issue. 2 Black. Comm. 115, 381, n. 13. Lit. § 31. Co. Lit. 27. In last wills and testaments, an *estate tail* may be created by a devise to a man and his *seed*, or to a man and his *heirs male*, or by other irregular modes of expression. 2 Black. Comm. 115. Co. Litt. 9, 27, a. 3 Salk. 336. 2 P. Wms. 2. A devise to A. and his wife and the *heirs of their bodies* was adjudged an entail ; but a devise to A. for life, remainder to B. *and his heirs male*, is a fee, and no entail. 8 Viner's Abr. tit. Estates, U. § 1, 2. Where a use was limited by *feoffment* to G. Dormer and to his *heirs male*, it was held that it was an estate in fee in G. Dormer, and that it could not be an estate tail, because there was not any body named from whom the heirs male should come ; to which it is added, " and so it is in case of a *devise*," as appears 9 Hen. 6 Pl. 25. *Abraham* v. *Twigg*, Cro. Eliz. 478, which case is commented upon and fully approved by Mr. Preston, 2 Preston, 492 &c. See also *Idle* v. *Cook*, 1 P. Wms. 70, in which the same doctrine is

held, and *Holt*, C. J. says, the case of *Abraham* v. *Twigg* is so strong as not to be answered. A devise to a man and his *heirs male* will pass an estate tail, for the law in favor to the intention of the testator will supply the words *of the body*. 2 Preston, 535, citing 1 Inst. 27, a. ; 3 Salk. 336. See also 1 Preston, 312, 314, 332, and cases there cited. The defendant and his wife therefore took either an *estate of inheritance* in fee simple, or an *estate in fee tail ;* and if the latter, then the statute abolishing entails converted it into a fee simple. 1 R. L. 52, § 1. As to the damages: The grantee can recover damages for the breach of the covenant of seisin, in proportion only as the title has failed. Such was the rule laid down in *Morris* v. *Phelps*, 5 Johns, R. 49 and *Guthrie* v. *Pugsley*, 12 id. 126 ; in which cases the *title* failed to a part of the *land ;* and upon the same principle, if it be adjudged in this case that the defendant and his wife had but a life estate in the premises, the plaintiff can recover only in proportion as the *estate is* less than that conveyed to him.

*J. W. Edmonds*, for the plaintiff. The intent of the testator was to devise to the defendant and his wife, and to the survivor of them, an estate for life only, with remainder to their *sons* in fee. The devise to the defendant and his wife in the *premises* is without words of limitation, which, of itself, gives only a *life estate ;* but the *habendum* clause of that devise expressly limiting the estate to the devisees and the survivor *during* their *natural lives*, all doubt of the testator's intention is removed, and full operation should be given to it. The power to the defendant and his wife to execute leases is an enlargement of the estate previously given ; but the restriction as to the terms of such leases, the limitation of the rents to be reserved, and the direction that the rents and profits due at the decease of the first takers shall go to the heirs male, show that it was not intended to give an estate of inheritance to the defendant and wife. The testator's intention being manifest, there are no rules of law to prevent its being carried into effect. If the defendant and his wife have an estate other than that for life, it is an estate in tail male by implication ; and

such estates being abolished by statute, the law will not raise an illegal estate by implication. The devise to the defendant and wife can be considered as giving an estate tail only by the operation of the rule in *Shelly's case*, which always yields to the intention of the testator when it can be clearly ascertained ; and never operates when the devisee for life has children living at the death of the testator, and the devise to such children has fresh limitations added, and other words of inheritance grafted upon it. The devise of the remainder to a portion of the *heirs apparent* of the first takers enables them to take as *purchasers*, especially as the estate is given to them as *tenants in common ;* and such of them as were in life at the death of the testator accordingly took the estate in remainder, which opened to let in after born *heirs male* of the defendant and his wife. In support of these several positions, the counsel cited many authorities, and particularly relied upon the case of *Rogers* v. *Rogers*, 3 Wendell, 503.

*By the Court*, NELSON, J. The will of John Livingston, the father of the defendant, as to the devise of the tract of land of which the premises in question are a part, is in the form generally found in deeds of conveyance, and in searching for the intent of the testator in this case, the rules applicable to the construction of deeds are very material. Having used the technical terms found in that species of conveyance, and which are well understood in the law, it is but reasonable to presume they were used in their well known sense, and this meaning should be given to them, unless clearly explained or overruled by other parts of the will. The *granting clause* or premises, as it is called, is " to Robert Le Roy Livingston and Anna Maria, his wife," without any words of inheritance, and upon well settled principles of construction, conveyed only a life estate. The *habendum clause*, the office of which is to limit the certainty and extent of the estate granted, is as explicit as language can make it ; it is in these words : " To have and to hold the same unto my son Robert Le Roy and Maria his wife, and the survivors of them *for and during* their *natural lives*." And the testator, to put his meaning beyond all possible doubt, (clearly evincing that he

well understood the legal operation of the foregoing words,)    NEW-YORK,
adds immediately, a power to execute leases for the whole de-    May, 1834.
vised tract for the term of two lives, reserving an annual rent,    Tanner
and fixing the minimum amount; and also gives power to          v.
carry into effect any contracts for leases which he himself had    Livingston.
made, or might thereafter make, of a part of the premises.
Had the will stopped here, it would have been impossible to
have raised a question, either upon the apparent, or presumed
intent of the testator; both would have concurred, as is al-
ready seen, in limiting to the first takers an estate for life.    It
is the legal and technical effect of the words in the granting
clause or premises, confirmed by the express and positive lan-
guage of the *habendum*.    2 Black. Comm. 110, 122.    4 Cruise,
439.    Id. 32, § 1, 4, 8, also page 431, § 43, 55.    Shep. T. 75.
The habendum clause may enlarge, abridge or explain the
premises : as where, in the premises, an estate is given to the
grantee for life, habendum to him and his heirs, he will take
an estate in fee—and where no estate is limited in the premi-
ses, and an express estate for *years* is given in the habendum.
In the former case the estate is enlarged by the words of in-
heritance ; in the latter abridged, because no estate being fixed
in the premises, the legal intendment gives an estate for life.
In this case the estate expressly limited in the habendum
clause is of the same description as that to be derived by legal
intendment from the premises; which concurrence affords
a manifestation of the testator's intent, too clear to be misun-
derstood.

Let us now examine some other clauses of this will, and
see if they can fairly modify the explicit language and mean-
ing of those already referred to.    The form of the devise to
the heirs is similar to that to the *ancestors*, and is equally ex-
plicit.    " From and immediately after the decease of my said
son Robert Le Roy and Maria his wife, I give and bequeath un-
to their *heirs male* all, &c. describing the same premises specifi-
ed in the devise to Robert Le Roy and wife ; to have and to hold
the same unto the said heirs male of my said son Robert Le
Roy and Maria his wife, and to their heirs and assigns forever,
share and share alike." Applying the same rules of con-
struction to this as to the former devise, it is clear, the *heirs*

*male* take the fee of the land : the *habendum* enlarging the granting clause, by adding words of inheritance, and the words " share and share alike" expressly distributing the estate among them as tenants in common.

The only ground upon which the slightest doubt can be raised as to the intent of the testator is the rule of law familiarly known as the rule in *Shelly's case,* i. e., " where the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to *his heirs* in fee or in tail, the word *heirs* is a word of *limitation* of the estate, and not of *purchase.*" 1 Co. 94. It has, however, been perfectly settled, at least since the celebrated case of *Perrin* v. *Blake,* 4 Cruise, 381, tit. 38, that this rule must give way to the plain and manifest intent of the testator; Fearne, 186, 191, 3 Am. ed; 4 Cruise's Dig. 394, tit. 38 ; 4 Kent's Comm. 225 ; 3 Wendell, 511, 523 ; and when enforced, is done so only more completely to effectuate such intent. Applying the rule to this will, and giving full effect to it, the devise would vest in the first takers, (Robert Le Roy and wife) an estate in fee tail by implication. 1 Co. Litt. 632. 3 Salk. 336. 5 T. R. 337. The same words used in a deed would pass an estate in fee simple. 3 Salk. 336. 5 T. R. 338, per Buller, J. If we could suppose this to be the intent of the testator, to wit, to give to the devisees an estate in fee tail, and there is no escape from it under the rule in Shelly's case, then (if our statute turning these estates into fee simples had not been interposed, and we are not to presume the testator took this into consideration in making his will) the heirs of Robert Le Roy and wife would inherit according to the law of primogeniture : the eldest son would take the whole, and after the extinction of his heirs general, the next son, if living, and so on. This construction is adopted in many of the cases in England, for the avowed purpose of carrying into effect what is supposed to be the general intent of the testator, to wit, to include the whole line of the heirs of the body of the first taker; and this presumed general intent is allowed to prevail over the particular intent derived from the express limitation to him of an estate for life. If this particular intent should prevail in this case, the persons de-

NEW-YORK.,
May, 1834.

Tanner
v.
Livingston.

signated as *heirs*, or *heirs male*, can only take under the will as purchasers, which necessarily cuts off a portion of the general heirs of the first taker, because those taking as purchasers are a new stock, from which the estate descends to their general heirs. The heirs of the father and son are not throughout identical ; if they were, one of the principal reasons for the application of the rule in *Shelly's case* to wills, would not exist. If we allow the particular intent to prevail in this case, the sons of Robert Le Roy Livingston living at the time of the death of the testator took a vested remainder in fee, which opened to let in after-born children. 4 Johns. R. 61. *Doe* v. *Provost*, 5 T. R. 484. *Doe* v. *Perrin*, Fearne, 313, 314, 3d Am. ed. At the time of the death of the testator, the defendant and his wife had three sons, and after his decease three other sons were born. The grand-children of a deceased son will then take, according to well settled principles, which will carry into effect the manifest intent of the testator. The presumed general intent would give the whole estate to the eldest son and his heirs, to the exclusion of all the rest.

The effect of our statute upon estates tail, as before observed, is to vest in the devisees the fee, which, on their decease, would then descend to the grand-children as well as children ; but we cannot suppose the testator speculated upon the operation of this statute ; and besides, his plain intent would still be defeated, for the estate would descend to all the children, *females* as well as *males*, whilst the devise is to the *heirs male* of Robert Le Roy and Maria his wife. Estates tail in England are common, perhaps more so than those in fee simple ; and when language is used there by draftsmen, which, according to the rules of construction, would create an estate tail, unless there are other clauses in the instrument clearly repelling such construction, the fair inference of the intent of the testator undoubtedly would be to devise such an estate. But in this state, since 1786, when entails were abolished and known not to exist, it seems to me less explicit language, inconsistent with the creation of this estate, should be admitted by the courts to repel such a construction, because an intent which is unlawful should not be as readily implied or admitted as one that is both lawful and common. It is difficult to

NEW-YORK,
May, 1834.

Tanner
v.
Livingston.

believe that a testator, with or without legal advice, intended to devise to his children an estate, in the face of the statute; and I apprehend nothing short of language quite explicit, if not imperative, could justify the conclusion of such an intent.

Even in England, where this rule is rigidly applied in the construction of wills, where a devise is to a person and his heirs, or to the heirs of his body ; and there are words of explanation annexed to the word *heirs* by which the testator meant to qualify that term, and not use it in its technical sense ; but as a *descriptio personarum*, to whom he intended to give the estate after the death of the first taker, the word *heirs* will operate as a word of *purchase*. 4 Cruise, 346, Fearne, 183, 7. The case of *Doe, lessee of Strong*, v. *Goff*, 11 East, 668, is a striking and apposite illustration of this position. The testator had a wife, a son and a daughter, and he devised the premises to his wife for life, and after her decease, to his daughter, Mary Goff, and to the heirs of her body, as tenants in common. Mary entered upon the premises, and died leaving a son, the defendant, and four daughters, the lessors. It was contended for the lessors, that their mother took only an estate for life, and that each of the children took a fifth by purchase. The defendant contended that she took an estate tail, and that on her death the whole vested in him as heir in tail by descent. It was admitted by the court that the words " heirs of the body" were *prima facie* words of limitation, but that they might be construed to be words of *purchase*, where it was clearly so intended ; and the provision to take *as tenants in common, and not as joint tenants*, was considered as showing distinctly that the testator contemplated something very different from an estate tail, because an estate tail, if there were sons, would vest wholly in the eldest son, to the exclusion of all the rest, and of such an estate there could be no tenancy in common or joint tenancy.

Now, in the case under consideration, the explanation is still more explicit and distinct, for the testator not only provides that the heirs male shall take as tenants in common, but he has, in the most formal manner, given to them an estate in fee : all of which is wholly inconsistent and irreconcilable with the idea of a tenancy in tail. See also *Low* v. *Dawes*, 2

Ld. Raym. 1561. *Doe* v. *Lamsing*, 2 Burr. 1100. *Goodtitle* v. *Herring*, 1 East, 264. Without pursuing this part of the inquiry further, it is sufficient to say that it is too much to ask the court to reject the explicit language of the will limiting the estate to Robert Le Roy and wife, " for and during their natural lives," and (after their decease) the equally distinct and explicit devise to their *heirs male* of the estate in fee, as tenants in common, aside from other explanatory clauses, in order to arrive at a conclusion that the testator intended to create an estate unknown to our law, since 1786, and which was abolished at that time, as incompatible with the genius and spirit of our institutions.

I may add that the clause in the will, by which the testator devised all his residuary estate to his son Herman, distinctly shows that he knew how to use appropriate language to create an estate in fee when he so intended.

It is said that the provision in the will, imposing the payment of the debts of the testator upon his son Robert Le Roy. is sufficient to give to him an estate in fee by implication, 10 Johns. Rep. 151. 18 Johns. R. 35. But beside the explicit limitation of an estate for life in the will, which of itself would probably be a sufficient answer to this position, Cowp. 841, per *Mansfield J.*, 5 T. R. 337, this clause assumes expressly that the previous advances of the testator to his son exceeded the debts which he is directed to pay, and he therefore bequeathed to him, in the same clause, the residue of such advances, after paying the debts. The testator thus acting under the belief that his son owed him a sum exceeding the debts directed to be paid, it would be unreasonable to imply from this clause, that he must have intended to devise to him the fee. The reason of the rule does not apply, as the implication of a fee is founded upon the idea that the charge of the debts upon the person of the devisee, in respect to the estate in his hands, would subject him to loss unless he took the fee. Here the testator merely directed the application of his own funds to the payment of his debts, releasing the surplus to his son.

As to the mortgage to the insurance company, it is not a charge upon the person of Robert Le Roy Livingston, but up-

NEW-YORK,
May, 1834.

on the land, or rather a small part of the tract, and therefore, does not fall within any of the cases on this point.    10 Johns. R. 151, and cases there cited.

The court however erred in not admitting the evidence of the value of the life estates, as the plaintiff's title to that extent is valid.