## MILLER *v.* MACOMB.

An executory devise limited to take effect upon the death of the first taker
*without issue*, was at common law held to be void on account of the re-
moteness of the contingency, as it could not take place until after *an inde-
finite failure of issue;* and that rule governs all cases of devises made by
testators who died previous to the last revision of the statutes. Now,
however, it is declared by statute, that *issue* in such cases shall be con-
strued to mean *issue living at the death of the person named as ancestor*.

At how late a period in the life of a woman it will be deemed *impossible* for
her to become the mother of a child—*quere?*

APPEAL from Chancery. Mary C. P. Macomb filed
a bill against Justus D. Miller for the specific per-
formance of an agreement whereby the complainant con-
tracted to sell and convey in fee, and the defendant con-
tracted to purchase, certain real estate situate in the city
of New-York, which contract defendant refused to carry
into effect, alleging that the complainint had not a title in
fee. The property in question was formerly owned by
*Elijah Pell,* the father of the complainant, who, by one
clause in his last will and testament, devised a moiety of
a house and lot in *Cherry-street* to his daughter, Mary C.
Pell, in fee, and by another clause disposed of other pro-
perty in these words: " I give also unto my daughter
Mary C. Pell, the *use* or *rent* of my one-half moiety of the
water lots, or land covered with water, and the wharf
which I purchased and built in company with Thomas
Pearsall, being on the east side of Catherine-slip, *for and
during her life and no longer;* and *after her death* I give
the said lots of land, water lots and wharf, with all the

right to the further grant from the corporation into the ri-
ver, unto the child or children of my said daughter, Mary
C. Pell, should she *leave* any: if more than one, to be
equally divided between them, share and share alike, to
them their heirs and assigns forever in fee simple." An-
other portion of the property in question, was by another
clause devised in like terms, except that the word *have*
was substituted for the word *leave*, as above italicised.
The will also contained a clause in these words: " Now
my will is, in case my said daughter Mary C. Pell *should
die and leave no lawful issue*, that my executors, or the
survivor or survivors of them, *sell all my real estate*," &c.,
directing the appropriation of the proceeds. *Elijah Pell*
died in 1798, his daughter *Mary* then being twelve years
old. In 1806, Mary married Robert Macomb, and had
isssue by him, a daughter named *Julia*, who was born in
1809. In 1830 the husband of Mary died, and in 1831
her daughter Julia died unmarried and without issue. The
complainant stated, that at the time of the filing of the bill
she was of the *age of fifty-five years, and that it was im-
possible she should have another child*. To this bill
the defendant *demurred*. The Chancellor over-ruled the
demurrer, and decreed a specific performance.

The following opinion was delivered by the CHANCEL-
LOR:

" The whole difficulty in sustaining the complainant's
claim to an absolute estate in fee simple, in the premises in
question in this suit, arises from the executory limitation
over of the testator's real estate to his collateral relatives,
in case his daughter should die and leave no lawful issue.
The previous clauses of the will gave to the complainant
an estate for life in this portion of the testator's property,
with remainder in fee to her children, in case she should
*have* any; and leaving the estate to pass to the children of
his sisters, after the termination of such life estate, under
the residuary clause of the will, in case the complainant
should happen to die unmarried, or without having had

any issue. The effect of the will, therefore, independent of the clause in question, or if the limitation over of the proceeds of the property contained in that clause be void, by being too remote in the events which have occurred, would be to vest the remainder in fee in the daughter of the complainant *immediately* upon the birth of that daughter in 1809, subject to open and let in any after-born children as tenants in common in such remainder; (*Hannan* v. *Osborn,* 4 *Paige's Rep.* 336;) for a remainder is vested in interest so as to be transmissible to the heirs or legal representatives of the remainder-man, as soon as he is *in esse,* and is ascertained as the person entitled to the remainder, and who will have an immediate and absolute right to an estate in possession in the premises, upon the termination of the precedent estate or estates. (5 *Paige's Rep.* 466.) If the limitation *over* in this case is void therefore, as depending upon an idefinite failure of issue, the daughter of the complainant, upon her birth in 1809, immediately became entitled to an absolute vested interest in the remainder in fee simple, subject, however, to open and let in after-born children; and as it is now ascertained that the birth of any other children has become physically impossible, it follows that the daughter of the complainant, at the time of her death in July, 1831, was the absolute owner of the premises in question, subject only to the life estate of *her* mother therein. And as her father was then dead, that interest descended to her mother as her only heir at law, under the provisions of the sixth section of the title of the Revised Statutes relative to the descent of real property. (1 *R. S.* 752.)

The construction of the clause of the will, which limits the proceeds of the testator's estate over to his collateral relatives, in case his daughter should die and leave no lawful issue, must depend upon the law as it existed previous to the adoption of the Revised Statutes, as the testator died in 1798, and the statutory *provision* on this subject is not declaratory of the law as it previously existed, but is the

1841.

Miller
*v.*
Macomb.

adoption of a new rule for the government of future cases. 1 *R. S.* 724, § 22. Upon a full examination of this case, I have arrived at the conclusion, that there is nothing in this will to take it out of the technical rule of construction which existed in this state and in England previous to the change made by the Revised Statute: that a limitation over of real estate, in the event of the death of the previous taker without issue, or without leaving issue, meant an indefinite *failure* of issue, and not a failure of issue at the time of the death of the first taker. The American as well as the English cases on this subject, are collected and commented upon by Chancellor Kent, with his usual ability, in his Commentaries on American Law, 4 *Kent's Comm.* 271, and it is not necessary, therefore, to refer to them here more particularly. He says, and such was unquestionably the law on the subject, both here and in England, in respect to limitations of interest in real estate, previous to 1830, "If an executory devise be limited to take effect after a dying *without heirs* or *without issue*, or *on failure of issue*, or *without leaving issue*, the limitation is held to be void, because the contingency is too remote, as it is not to take place until after an indefinite failure of issue." The decision of the court for the correction of errors, in the case of *Patterson* v. *Ellis's exts.* 11 *Wend.* 259, settled the question as to the construction of the words in a will, *without leaving lawful issue;* and I see *nothing* in the devise in the present case which can possibly take it out of the operation of that decision, either as to the real or the personal estate of the testator. The complainant, therefore, has an absolute and indefeasible estate of inheritance, in fee simple, in the premises in question, by the union of the life-estate devised to her by the will of her father, with the remainder in fee to which she has become entitled as the heir at law of her daughter.

There being no substantial objection to the title, the complainant is entitled to a decree for the specific performance of the contract set forth in her bill, and admitted by

the demurrer. But under the circumstances of this case I shall not charge the defendant with costs.

From the decree thus made, the defendant appealed to this court, where the case was argued by:

*J. Smith,* for the appellant.

*J. Blunt,* for the respondent.

*Points submitted and argued on the part of the appellant:*

I. The respondent took only a life-estate under the will.

II. The fee did not vest in her daughter upon her birth, but remained in abeyance until the death of the respondent. 2 *Salk.* 675. *Fearne* 3.

III. At the death of the respondent, the property is to be sold by the executors under the will.

*Points submitted and argued on the part of the respondent:*

I. Mary C. P. Macomb took, under the will of her father, an estate for life, with remainder in fee to her children, to vest as they came into existence. 4 *Paige R.* 336.

II. Upon the birth of Julia, her daughter, the fee became vested in her, and at her death it descended to the respondent, her mother. 1 *Rev. Stat.* 752. 5 *Paige,* 466. 1 *Sumner,* 235.

III. The limitation over, " if the said Mary should leave no lawful issue," must depend upon the law as it existed before 1830, and according to that law such limitation is void, as being too remote. 4 *Paige,* 336. *Patterson* v. *Ellis's exrs.* 11 *Wend.* 259. 4 *Kent,* 271. 3 *Term. Rep.* 484. 5 *Barn. & Cress.* 866.

IV. By the union of the life-estate devised to the respondent by the will, with the remainder which she inherited from her daughter, she acquired a fee simple absolute in the property of her father referred to in the will.

When this cause was called up for decision:

**1841.**

Miller
*v.*
Macomb.

Mr. *Justice* Cowen, after stating the facts of the case, observed, that the executory devise limited to take effect, *in case Mary should die and leave no lawful issue,* was bad, the contingency being too remote, as it was not to take place until after an indefinite failure of issue. But, he observed, it has been said, that though the remainder vested in fee in the daughter of Mary immediately upon the birth of that daughter, still it was subject to open and let in after-born children as tenants in common. As to which, he said, it appeared from the bill that Mary was of the age of *fifty-five years,* and it therefore was not very probable that she would have another child. Indeed, he observed, the Chancellor has held that *it is impossible* she should have another child. (The Chancellor, who was present, denied that he had so held, and said he could not have been guilty of such an absurdity. The parties had agreed to have a clause inserted in the decree, that there was a physical impossibility to the complainant again becoming a mother, and, therefore, he had not passed upon that question.) Well, then, said the judge, the objection is obviated, and the decree ought to be affirmed.

*Senator* Verplanck observed, that he thought it well, that the explanation of the Chancellor had been made, for it ought not to be decided as a *question of law,* that it is *impossible* for a woman of the age of *fifty-five* to become the mother of a child, when, from works entitled to judicial notice, it seems that such an event is *not impossible.* He said he had lately observed mention made in a work on medical jurisprudence, of the birth of a child subsequent to the mother attaining the age of *fifty-six.** After, how-

---

* Women in *England* and *North America* ordinarily cease to bear children between the ages of *forty-five* and *fifty,* but there are many exceptions. *Dr. Theodric Romeyn Beck,* in his valuable work on *Medical Jurisprudence, vol.* 1, *p.* 523, *6th ed.* after mentioning the famous case in which the Duke of Hamilton was appellant and Archibald Stewart respondent, in which the latter claimed to be the son of Lady Jane Stewart, who was delivered of twins in her *fiftieth year,* and alluding to a previous part of his work, page 207 of the same volume in which he had treated of births in females of advanced

ever, the explanation of the Chancellor, he would vote for an affirmance of the decree.

By the PRESIDENT of the Senate.  This is an amicable suit.  The bill is filed for the specific performance of a contract for the purchase of land; and the only question is, whether the respondent, under the will of her father, and by the death of her only child without issue, is the owner in fee simple of the premises embraced in the contract ?

As regards the house and lot in Cherry-street, there can be no question that the respondent took an estate in fee

---

ages, adds a note, which he has kindly given me permission to transcribe.  It is in these words: "Probably the most remarkable instance on record (*if true*) is that related by the Bishop of Sens in the Memoirs of the French Academy of Sciences for 1710, of a man in his diocese at 94, and a woman at 86, having a child, (Memoirs of Literature, vol. 7, p. 78.)  Pliny says that Cornelia, of the family of Scipio, bore a child at 60.  (Paris's Medical Jurisprudence, vol. 1, p. 173.)  He mentions other cases.  In Dodsley's Annual Register for 1775, is the following: "June 25, 1775.  The wife of Mr. Ladenberg, wine-merchant in Castle-street, Leicester Fields, in the 54th year of her age was brought to bed of twins.  Mrs. L. though married upwards of 30 years, never had a child before."  During the present year (1833) a case has occurred in the English courts, in which the leading question appears to be whether it is possible for a woman to have a child at the age of 51.  (Lancet N. S. vol. 12, p. 45.)  On the next page the author refers to the case of *Leng v. Hodges*, Jacob's Reports in Chancery, 585, where a fund was devised to be paid over to certain individuals in the event of the first beneficiary dying *without leaving children*, in which the Master of the Rolls refused his assent to the transfer of the fund to the persons last entitled, although the first taker had no children, and had attained the age of *sixty-nine years*, unless security was given to refund to *after-born* children.  At page 207, above referred to, is another note of Dr. Beck in these words: "Many cases of births in advanced age are on record.  See Capuron, pp. 93, 98.  The succession to an estate was disputed in France, because the mother was 58 years old when the child was born.  It was decided in favor of the applicant, because similar instances are mentioned by ancient and modern writers.  Smith, p. 493, mentions cases of early and late fecundity.  I quote the following, because it happened lately: "May, 1816.  Mrs. Ashly, wife of John Ashly, grazier of Firsby, near Spilsby, at the age of 64, was delivered of two female children, which, with the mother, were likely to do well."  (Edinburgh Annual Register, vol. 9, part 2, p. 508.)  And the following is an American case.  A woman at Whitehall, in the state of New-York, named Ann Cook, had a child at the age of 64.  She had not menstruated for fifteen years, and her youngest child was 26 years old.  The child was born in February, 1836, and was doing well.  (Boston Med. and Surg. Journal, vol. 14, p. 79.)"

1841.

Miller
v.
Macomb.

simple. In respect to the undivided half part of the five lots on Catharine-street, the respondent took, under the will of her father, a life-estate; and, as heir, under the statute, of her daughter Julia, such interest or estate as that daughter had at the time of her death. It therefore becomes material to inquire what was the nature and extent of that interest. The testator devised to the respondent a life-estate in the undivided moiety of these five lots, remainder in fee to her child or children if she should have any, with a limitation over, *if she should die and leave no lawful issue*. If this limitation can be upheld and carried into effect, according to its terms, then the respondent has only a life-estate in the undivided moiety of the five lots in question; but I apprehend that the limitation is fatally defective. The limitation over, therein attempted to be created, is undoubtedly void, being made dependent on an indefinite failure of issue. See 1 *R. S.* 723, § 14, 15, 16. 5 *Cruise's Dig. tit.* 32, *Devise, ch.* 17. *Id. p.* 290. *Doe ex dem. Ellis* v. *Ellis,* 9 *East.* 382; and *Hannan and others* v. *Osborn and others,* 4 *Paige,* 336, where the Chancellor decided that " a limitation over after an indefinite failure of issue is void, as too remote," and that "*failure of issue*," and " *dying without issue*," were equivalent to an indefinite failure of issue; and so are the authorities. In *Patterson* v. *Ellis' heirs,* in this court, 11 *Wend.* 259, the same doctrine is laid down, after having been discussed at great length, and decided with much deliberation. So, also, in the case of *Doe ex dem. Comberback* v. *Sir R. Perryn,* 3 *T. R.* 484. Lord Kenyon, chief justice, and Ashurst, Buller and Grose, justices, decided that such a limitation over is void, and that the remainder vests. Julia, therefore, at her birth, took a vested remainder in fee, subject to open to let in children of the respondent born afterwards, if there should be any. See *Right ex dem. Shortridge* v. *Creber,* 5 *Barn & Cress.* 866; also the cases above cited of *Doe ex dem. Comberback* v. *Sir R. Perryn,* and *Hannan* v. *Osborn.* This remainder, on the death of

Julia without issue, passed under the statute to her mother, the respondent, as heir of her daughter, and being added to the life-estate which the respondent took under the will of her father, completed in her the entire fee simple. Having thus a full and unimpeachable estate in fee simple in the whole premises in question, she could convey the same in conformity with her contract with the appellant, and is, therefore, entitled to a specific performance of the contract. The decree of the Chancellor should be affirmed.

On the question being put, *Shall this decree be reversed?* all the members of the court present, who had heard the argument, answered in the negative. Whereupon the decree of the Chancellor was AFFIRMED.