### Conklin and wife *v.* Conklin and others.

Lands were devised to the testator's nephew for life, and at his decease to his male heirs which he " *now has or may have hereafter;*" but in case he should die without male heirs, then the lands were devised to his female heirs. At the date of the will and the death of the testator, the nephew had four sons living, two of whom outlived him, and two died in his lifetime. M. one of the latter, left a widow, two sons and a daughter; E. the other son, died intestate, and without issue. The nephew had two sons born after the testator's death, one of whom, I. died before his father, intestate and without issue. The other was the complainant in the suit. The nephew had two daughters, of whom one survived him, and the other F. died in his lifetime, leaving several children. On the construction of the will, it was *held;*

1. That by heirs male of the nephew, the testator meant *heirs apparent;* and that the devise embraced sons born after the death of the testator, as well as those then living.

2. That the sons living at the death of the testator, took vested remainders in fee in the lands, subject to open and let in after born sons; and that the latter took like vested interests, on their births respectively.

3. That the limitation to the female heirs was void, being consequent on an indefinite failure of male heirs.

4. That on M.'s death, his share descended to all his children, male and female.

5. That the testator's nephew, on the deaths of his sons E. and I., inherited their shares; and on his death the same descended, as in an ordinary intestacy, to his children and grandchildren.

Three of the sons having expended a large sum in valuable improvements, on the premises, in good faith, supposing that they were the sole owners; they were allowed in partition for such amount as the present value of the premises was enhanced by such improvements.

September 10; October 3, 1845.

Conklin v. Conklin.

This was a suit for the partition of lands in the county of Suffolk, of which Epenetus Conklin died seised on the 23d of April, 1801. By his will dated four days before his death, he made the following disposition.

"Item. I give and bequeath to my nephews Epenetus Conklin and Elkanah Conklin, to them, their heirs and assigns, the residue and remainder of all my personal estate," &c. "My will further is that my nephews Epenetus and Elkanah, shall have the use to occupy and improve the residue and remainder of all my real or landed estate, my houses and improvements and privileges whatsoever, excepting what has been heretofore disposed of, during their natural lives; and at their decease I bequeath and devise it to their male heirs that they now have or may have hereafter, but in case they die without male heirs, then I bequeath and devise it to their female heirs. My will further is that my lands or meadows lying in the town of Islip that I have given to my brother Platt Conklin during his natural life, and at his decease I give and bequeath to my nephews Epenetus Conklin and Elkanah Conklin, to use, occupy and improve with all the privileges thereunto belonging during their natural lives, and at their decease I bequeath and devise it to their male heirs that they now have or may have hereafter. And in case they die without male heirs, then I bequeath and devise it to their female heirs. It is my will, I do devise, order and direct that my executors shall make a just division as near as they can ascertain according to their knowledge and judgment, of all my real or landed estate, improvements and privileges of every kind that I have given to my nephews Epenetus Conklin and Elkanah Conklin during their natural lives. After such division is so made, Epenetus and Elkanah shall or may set the separate divisions at auction between themselves only, and bid for choice if they do not otherwise agree upon a division. Notwithstanding what is above written, such divisions so made by my executors of all my real or landed estate, houses and improvements of every kind what I have given to my nephews Epenetus and Elkanah, shall be utterly binding to them, and each of them, and to their separate heirs forever in fee simple."

In 1806, a partition and division was made between the

nephews Epenetus and Elkanah, of the premises so devised to them; by which division the lands in question in this suit became vested in Elkanah Conklin, in severalty according to the will. At the date of the will and at the death of the testator, Elkanah C. had four sons living, viz. Ebenezer, Moses, Elkanah H. and David S., who were his only presumptive male heirs. During the life of Elkanah C., (the testator's nephew,) his son Ebenezer died intestate and without issue; and his son Moses also died, leaving his widow, Sarah R., and three children, Moses, Sarah A., and George, all of whom are still living.

Elkanah C. had two other sons born after the testator's death, viz. Isaac and Joseph O., of whom Isaac died in his father's lifetime, intestate and without issue. Freelove, a daughter of Elkanah C., died in his lifetime, leaving issue by two husbands, viz. William, Moses, Joseph H., John and George O'Kell, and Gertrude Doughty. Her last husband, William Doughty, survived her. Mary another daughter of Elkanah C., married John Harris. Elkanah Conklin died July 28th, 1842. He left no issue other than those enumerated.

The bill was filed by Joseph O. Conklin and his wife, against the surviving children, and grandchildren of Elkanah Conklin, his widow, the widow of Moses C., William Doughty, and two mortgagees of undivided shares in the premises. One of the mortgages it was charged, was given for moneys expended in improvements on the premises, made at a time when the three surviving sons supposed they owned the whole in fee under the will. The bill charged that the children of Freelove Doughty had no estate or interest in the premises; and it claimed an allowance for the sums laid out in improvements, to the extent of the value of the same.

*S. W. Gaines*, for the complainants.

*J. McKeen* and *S. D. Craig*, for the children of Moses Conklin.

*J. T. Brady*, for the infant children of O'Kell.

THE ASSISTANT VICE-CHANCELLOR.—The devise to the

nephews of the testator was clearly for their life only, and the words used in the devise of the remainder, are not such as would have created an estate tail, within the rule in Shelley's case. (6 Cruise's Digest, 346 ; *Tanner* v. *Livingston*, 12 Wend. 83.)

The principal question in the cause, arises upon the construction of the words, *"their male heirs that they now have or may have hereafter,"* in the gift of the estate in remainder.

It is insisted in behalf of the various parties, 1. that the testator intended only those who were properly *heirs* of his nephews, which construction excludes those male children of Elkanah Conklin who died in his lifetime. 2. That the devise was to all such heirs próper *per capita*, and not *per stirpes.* And 3., that all Elkanah's male children living at the death of the testator, took a vested remainder in fee, which remainder opened and let in after born male children of Elkanah.

The expression *"male heirs that they now have,"* is a good description of the male children of the testator's nephews who were then living. The testator meant *heirs apparent,* and not heirs in its legal signification. (1 Powell on Devises, by Jarman, 306 ; 1 Fearne on Cont. Rem. 320 ; *James* v. *Richardson*, T. Jones, Rep. 99, S. C. T. Raym. 330, and Carthew, 154, *nomine, Burchett* v. *Durdant.*)

The devise of the remainder therefore, embraced all the sons of Elkanah Conklin who were living at the death of the testator, as well as those who were born subsequently.

The next inquiry is whether those sons took vested interests, during the continuance of their father's life estate ; or were the devises to them contingent remainders ?

There is nothing in the will adverse to the ground that these remainders vested, except the limitation over on Elkanah's dying without male heirs. I need not stop to consider the force of that limitation, in this part of the case, for I do not think that if valid, it prevents the remainders from vesting in his sons. After the death of the testator each of the sons of Elkanah then living, would on the death of their father have had an absolute and immediate right to the possession of the lands in question. It was a right, which could not be defeated by any contingent event, failure of condition precedent, or act of a third person ; provided

they lived till the end of the particular estate, and the termination of that estate was an event which was certain to happen. The remainders therefore, vested in interest at the death of the testator, in the sons of Elkanah then living, subject to open and let in his after born sons, and the latter on their birth respectively, took like vested remainders as tenants in common with their brothers. (See *Hawley* v. *James*, 5 Paige, 466, per Chancellor ; *Macomb* v. *Miller*, 9 ibid. 265 ; S. C. on appeal, 26 Wend. 229 ; *Williamson* v. *Field*, July 21, 1845, before the Assistant Vice-Chancello r.)(*a*

If the limitation to the female heirs, on the failure of heirs male, were valid, then these remainders which vested in the sons, were liable to be defeated by that event. But I am satisfied that the limitation was too remote, and it can not be upheld. It was to take effect on Elkanah's dying *without male heirs ;* in other words, upon an indefinite failure of his male heirs, lineal and collateral ; which might happen by possibility in this generation, but which more probably, would never happen. It was therefore void, according to the established rule which prevailed before our revised statutes. (4 Kent's Comm. 273, *et succ.,* 2d ed. ; *Macomb* v. *Miller, ubi supra.*)

The result is that each son of Elkanah Conklin living at the testator's death, or born subsequently, took a vested and absolute estate in fee in remainder, in the premises devised. On the death of Ebenezer and Isaac without issue, Elkanah their father inherited their undivided shares, and on his death, those shares descended to his heirs.

The children of Moses Conklin inherited his share, and also their proportion of the shares of Ebenezer and Isaac. And the children of Mrs. Doughty as heirs of their grandfather, inherited a part of the same two shares.

Mrs. Harris in like manner inherited one-sixth part of the same shares of the property.

The partition must be made on these principles.

In regard to the improvements, the three sons who survived

---

(*a*) Now reported, 2 Sand. Ch. R. 533.

Elkanah, assert that they were made in good faith, and under the supposition that the whole title vested in those sons under the will of the testator. So far as the expenditures thus made, enhance the present value of the premises, the case of *St. Felix* v. *Rankin*, (3 Edw. Ch. R. 323,) is an authority for allowing such value to those parties.(*a*)

The complainant's counsel omitted to introduce proof on the point, supposing it would be proper on the reference as to title.

As there must be a reference also to establish the truth of the bill as against the infant defendants, the order may embrace the subject of the alleged permanent improvements. On the coming in of the master's report, the cause may be set down for a hearing, and a decree for partition made inc onformity with the facts as they then appear, and with the views now expressed.

---

(*a*) And see *Neesom* v. *Clarkson*, before Sir James Wigram, V. C. 4 Hare's R. 97.