HENRY HELLREIGEL, Respondent, v. JOHN B. MANNING, Appellant.

To sustain a defense of defect of title in an action to compel the performance of a contract for the purchase of land, there must be at least a reasonable doubt as to the vendor's title, such as affects its value and would interfere with a sale of the land to a reasonable purchaser.

Defects in the record or paper title may be cured or removed by parol evidence.

In such an action the records in the county clerk's office showed a deed of the lands to " Electa Wilds," and a subsequent deed, executed in 1867, from " Electa Wilder " to one S., which deeds were in plaintiff's chain of title: the defect alleged was that the records showed no conveyance from Electa Wilds. It appeared that under the last deed the title was held and the land occupied up to the trial of the action in 1881 ; that the deed to S. had been destroyed, but a mortgage given by him for purchase-money was produced, in which Electa Wilds was named as mortgagee. The commissioner, who took the acknowledgment to said deed, and S. both testified that the grantor was Electa Wilds, and that said grantor and the grantee in the former deed was the same person. *Held*, that there was no defect in the title and defendant was not justified in refusing to perform.

A party agreeing to sell and convey land at a future day does not, in the absence of a stipulation to that effect, owe the vendee any duty to keep the buildings upon the land in good repair, or to guard against the decay caused by time and ordinary use.

(Submitted June 27, 1884 ; decided October 7, 1884 )

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made May 15, 1882, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*H. C. Day* for appellant. The burden of proof was upon plaintiff to show affirmatively that he had a good title. ( *Wilson* v. *Holden*, 16 Abb. Pr. 133.) Defendant was entitled, by the express terms of the contract, to " a good title to the un-

divided one-half of the land in question, free from incum brances." ( *Weeks* v. *Tomes*, 16 Hun, 349 ; *Smith* v. *Wells*, 69 N. Y. 600 ; *Jordan* v. *Poillon*, 77 id. 518; *Thorn* v. *Sheil*, 15 Abb. [N. S.] 81.) A specific performance is always discretionary, and is never granted where there is any serious question as to the plaintiff's ability to make a perfect title. (Story's Eq. [Redf.], §§ 740, 742, 758; Fry on Spec. Perf., chap. 8 ; Chitty on Contracts, 1496, 1497 ; *Garrat* v. *Macon*, 2 Brock. 185, 244; *Hendricks* v. *Gillespie*, 35 Gratt. 193, 194; *Lawrence* v. *Farley*, 11 N. Y. Weekly Dig. 479 ; *Wing* v. *Underwood*, 4 DeGex, M. & G. 633.) In law, a good title is one " free from any reasonable doubt," a "marketable title." (Pomeroy on Spec. Perf. 278 ; *Schriver* v. *Schriver*, 86 N. Y. 575; *Brooklyn Park Com'rs* v. *Armstrong*, 45 id. 234; *Schwitz* v. *Rose*, 65 Howe [S. T.], 75 ; *Pyke* v. *Waddingham*, 17 E. L. & E. 534.) It was error not to allow defendant to show the circumstances under which he was drawn into making the contract with plaintiff, as bearing on its equitable enforcement. (Pomeroy on Spec. Perf. 58, § 40.) A plain duty, under the contract, rested on plaintiff, founded on good faith and fair dealing, to keep the building in repair. ( *Willard* v. *Taylor*, 8 Wall. 557, 565.) The imposition of costs on defendant was unwarranted and a gross violation of judicial discretion. ( *Pangburn* v. *Miles*, 10 Abb. N. C. 42, 52 ; *Morris* v. *Wheeler*, 45 N. Y. 708.)

*Spencer Clinton* for respondent. The only question raised on this appeal by the exceptions is the general one that plaintiff has not made out his cause of action. (Code of Civ. Pro., §§ 992–994.) The title tendered defendant was not defective because of the defective records. Such defect could be cured by proof, and the defendant was wrong in refusing to accept such proof. (*Seymour* v. *Delaney*, Hopk. 436 ; *Miller* v. *McComb*, 26 Wend. 229 ; *Fagan* v. *Davison*, 2 Duer, 153, 158 ; *Murray* v. *Harway*, 56 N. Y. 337, 343 ; *Smith* v. *Death*, 5 Wash. 371.) Defendant, having refused to accept the title on the ground that the record title was defective, and having

told plaintiff no proof would satisfy him, cannot claim that plaintiff did not offer to supply the proof. (*Selleck* v. *Tallman*, 87 N. Y. 106.) The contract in suit is not void for want of mutuality. (*Richards* v. *Edick*, 17 Barb. 260.) The contract, having been fully performed by plaintiff so as to become operative as to defendant, should be enforced. (*Sharkey* v. *Larkin*, 52 N. Y. 623.) The agreement was not void by the statute of frauds. (*Ballard* v. *Walker*, 3 Johns. Cas. 60; *Flight* v. *Ballard*, 4 Russ. 298; *Palmer* v. *Scott*, 1 Russ. & Mylne, 391; *Allen* v. *Bennet*, 3 Taunt. 175; *Seton* v. *Slade*, 7 Ves. 265; *McCrea* v. *Purmort*, 16 Wend. 465; *Hunter's Case*, 1 Edw. Ch. 5; *Clason* v. *Bailey*, 14 Johns. 488, 490; *Martin* v. *Mitchell*, 2 Jac. & W. 426; *Codding* v. *Walmsley*, 1 Hun, 585; *Burrell* v. *Root*, 40 N. Y. 496.)

EARL, J. This action was brought by the plaintiff to compel the defendant to specifically perform a contract for the purchase of land, and was based upon a written agreement signed, sealed and acknowledged by the defendant, and dated November 17, 1876, whereby he, in consideration of $50 paid to him by the plaintiff, agreed with the plaintiff that at the end of four years, if the plaintiff became dissatisfied with the purchase of the same land at that time made by him and should call upon the defendant to do so, he would pay him for his undivided one-half interest in the land the sum of $3,800, upon condition of his executing and tendering to the defendant a deed of his interest in the land "by a good title free of incumbrances." At the end of the four years the plaintiff tendered to the defendant a deed of the land and demanded performance on his part, which he refused upon the ground that there was a defect in plaintiff's title. It appeared by the records in the county clerk's office, that May 15, 1861, Daniel Clark executed a deed of the land to Electa Wilds, and that April 11, 1867, Electa Wilder executed a deed of the same land to one Snashell. These deeds were in the chain of plaintiff's title, and the only defect alleged was that the records did not show that the land had been conveyed by Electa Wilds, as

it could not be inferred from the records that Electa Wilder was the same person.

It is probably true that, looking at the records alone, there was such a defect in plaintiff's title that he could not compel the defendant to accept it. The two names are so dissimilar that they do not present a case of *idem sonans.* But yet the inference from the records is quite strong that the two names stand for the same person. They show title in Electa Wilds and not in Electa Wilder. The christian name, not a very common one, and all the letters of the surname but two are the same, and there is no conveyance in the name of Electa Wilds. If the two names do not stand for the same person, we have the case of an entire stranger to the title with a name quite similar conveying the title and passing it on through the chain to the plaintiff. But if we add to all this what must, in the absence of any proof by the defendant to the contrary, be presumed, that the title was held and the land occupied without dispute under the deed from Electa Wilder from April, 1867, to the trial of this action in 1881, the inference that the two names stand for the same person becomes almost conclusive. But here there was still more. The plaintiff proved conclusively that there was a mistake in the record. The deed to Snashell had been destroyed after the title had passed out of him; but the mortgage given back by him for purchase-money was produced, and in that Electa Wilds was the mortgagee. The commissioner of deeds who drew the deed and took the acknowledgment thereof was produced as a witness for the plaintiff, and he testified that the grantor in the deed to Snashell was Electa Wilds, and so Snashell also testified; and it also appeared that the grantor of Snashell was the grantee of Clark, who was her brother, and that the final letter in "Wilds" was so written that undoubtedly it was mistaken for an "r" by the recording clerk. Under all these circumstances it was entirely clear that there was in fact no defect in plaintiff's title, and the court at the trial term was justified in so holding.

The whole evidence left the case free from any reasonable

doubt that the plaintiff's deed would convey a good title, and hence, notwithstanding the apparent defect in the chain of title as shown by the records, the defendant could not justly refuse to perform his agreement. A purchaser cannot justify his refusal to perform his contract by a mere captious objection to the title tendered him ; nor is it sufficient for him when the jurisdiction of an equity court is invoked to compel him to perform his contract, merely to raise a doubt as to the vendor's title. Before he can successfully resist performance of his contract on the ground of defect of title, there must be at least a reasonable doubt as to the vendor's title — such as affects its value, and would interfere with its sale to a reasonable purchaser, and thus render the land unmarketable. A defect in the record title may, under certain circumstances, furnish a defense to the purchaser. But there is no inflexible rule that a vendor must furnish a perfect record or paper title. It has frequently been held that defects in the record or paper title may be cured or removed by parol evidence. (*Seymour* v. *De Lancey*, Hopk. 436 ; *Miller* v. *Macomb*, 26 Wend. 229 ; *Fagen* v. *Davison*, 2 Duer, 153 ; *Brooklyn Park Com.* v. *Armstrong*, 45 N. Y. 234 ; *Murray* v. *Harway*, 56 id. 337 ; *Shriver* v. *Shriver*, 86 id. 575.)

Upon the trial, the counsel for the defendant "offered to show the circumstances under which he was drawn into making" the contract. When asked by the court whether he claimed there was any fraud or misrepresentation by which the defendant was induced to enter into the contract, he replied as follows: "No, sir; we wish to show the circumstances under which Mr. Manning made this contract as bearing upon the equitable enforcement of this contract." The court then excluded the offer, and now the defendant complains of this ruling as error. The defendant should have made his offer more specific, that the trial judge could see whether the circumstances which he proposed to prove were material or not ; and there were no allegations in the answer under which the proof offered could be given. It was not alleged that the contract was unfair, inequitable, unreasonable

or unconscionable, or that the defendant was overreached or induced to enter into it by any unfair means.    There was, therefore, no error in excluding the offer.

Upon the trial, the counsel for the defendant offered as follows : " To prove that during the four years of the running of the contract in question, the buildings on the premises have never been painted, although they required painting ; that they have been suffered to become dilapidated for want of painting ; that Mr. Hellreigel has allowed them to run down ; that he has realized every thing from the buildings without laying out any thing on them for repairs ; to show that he has permitted the sewers to be stopped up ; that the cellars are filled with water to the depth of two feet and upward ; that the gates have been broken off the hinges ; that the sidewalks have been permitted to become out of repair, and dangerous for the people passing over it ; " and that, in consequence of all these, the buildings had depreciated in value to the extent of several hundred dollars.    There was no allegation in the answer nor offer to prove that the plaintiff had done any thing intentionally or willfully to damage the buildings or depreciate their value.    The deterioration in the condition of the buildings seems to have been due to natural causes, and the ordinary use of them.    It is not claimed that there is any thing in the language of the contract which required the plaintiff to keep the premises in repair, and hence his conduct in reference to them must have been such that it would be inequitable and unjust for a court of equity to enforce the contract in his favor.    There was no allegation in the answer, and no proof that the premises were not worth the sum which the defendant agreed to pay for them.    There was no proof, or offer to prove, that the plaintiff had realized more than a fair interest upon his investment from the rent of the premises, and hence that he put into his pocket what he might well have expended in keeping the premises in good repair. We do not perceive that, under the circumstances, he owed the defendant any duty to keep the premises in repair.    A party agreeing to sell and convey premises at a future day

does not, in the absence of stipulations to that effect, owe the vendee any duty to keep them in good repair, or to guard against the decay which is due to time and ordinary use. Circumstances might occur which would impose such a duty upon the vendor; but they do not exist in this case, and were not offered to be proved.

We have examined other exceptions to which our attention is called by the brief submitted on behalf of the defendant, and it is sufficient to say of them that they point out no error.

The judgment should be affirmed, with costs.

All concur, except DANFORTH, J., absent.

Judgment affirmed.