414                    WISCONSIN REPORTS.

Damman vs. The Commissioners of School and University Lands.

THE STATE *ex rel.* JEREMIAH D. DAMMAN,

*vs.*

THE COMMISSIONERS OF SCHOOL AND UNIVERSITY
LANDS.

By the Revised Statutes of the state, a purchaser of school or university land, had
the right upon forfeiture of his contract of purchase, for the non-payment of the
sum due upon it, to revive it at any time before a public sale of the land (which
was provided for in the Statute), by the payment of all sums due upon the con-
tract, and a penalty of five *per cent.*

*Held,* that a purchaser of land under these statutes, could not be deprived of his
right to revive the contract without such public sale.

By the same statute it was provided that whatever money the land brought at the
public sale over and above the sum due the state and the penalty, should belong
to the original purchaser.

*Held,* that the state could not deprive said purchaser of his right to this money by
an act of the legislature passed after the purchase of the land, authorizing the en-
try of the land by any one who would pay the sum due the state and the penalty,
without offering the land at *public sale* according to the statute in force at the time
of the purchase.

The provisions of the statute in relation to the sale of school and university lands,
at the time of the sale, entered into and became a part of the contract between
the state and purchaser, and no subsequent act of the legislature could change
the conditions or impair the obligations thereby incurred.

Under the provisions of the Revised Statutes, the purchaser had a right to revive
the original contract at any time after forfeiture and before a resale of the land,
by paying the sum due with interest, and all costs occasioned by the delay, and
five per cent. penalty upon the whole sum due.

Under the Revised Statutes, forfeited school and university lands were not subject
to private entry until they had been re-offered for sale at public auction.

THE relation in this case, shows that at a sale of school and
university lands, held in the county of La Crosse, on the 13th
day of November, A. D. 1851, one John S. Peaselee became the
purchaser of three several parcels of land particularly described
in the relation, each parcel containing forty acres, for the sum of
$50.40 for each parcel, and that he paid at the time of sale, the
sum of forty-seven cents on each parcel, being the interest in ad-
vance on the purchase price of each parcel up to the 1st day of
January, A. D. 1852 ; that upon such sale the commissioners of
school and university lands, issued to the said Peaselee duplicate

certificates of such sale, numbered 249, 250, 251, bearing date the said 13th day of November, 1851; providing in each of said certificates, that if the said Peaselee, his heirs, assigns or legal representatives, should pay to the state treasurer the sum of $50.41, being the amount of the purchase money for each of said parcels, in one or more installments, or at any time within thirty years from the said 13th day of November, A. D. 1851, and the interest annually in advance on the first day of January in each year, at the rate of seven per cent. per annum on any unpaid amount of the purchase money, and pay all taxes, the said Peaselee, his heirs or assigns, would be entitled to a patent for each tract of land. But in case of the non-payment into the state treasury of the purchase money or interest when the same should become due as aforesaid, or within thirty days thereafter, then in case of such failure the said certificate should be void, and the commissioners might take possession of said lands and resell the same.

The relation further shows, that on the 13th day of November, 1851, Peaselee paid to the commissioners the sum of $11.20, being the interest in advance on the said parcels of land for the year 1852, and up to the 1st day of January, 1853, but that he made default in the payment of interest for the year 1853. That the commissioners caused to be published in the *La Crosse Independent Republican*, a newspaper published at La Crosse, a list of school and university lands in the counties of La Crosse and Monroe, which had become forfeited, containing among other lands, the parcels before described. That said list contained no statement or certificate that said lands had become forfeited, or that they were subject to private entry. That said list was published in no other paper in the state, and was published for the first time in said La Crosse paper, the 6th day of October, 1854.

On the 4th day of October, 1854, one John S. Byrne entered at private sale the said parcels of land described in the certificate issued to Peaselee, upon which the commissioners issued to the said Byrne duplicate certificates of said lands, bearing date the said 4th day of October, 1854; that at the time of such entry he did not make any application in writing to the secretary of state; and that the said lands had never been re-offered for sale at public auction.

Afterwards, on the 13th day of February, 1855, the commis-

sioners issued an order, stating in substance that the forfeited lands in La Crosse and Monroe counties, had been sold without due advertisement, and directed that all certificates issued upon the resale of said lands be recalled upon payment of interest and penalty by the holders of the original certificates ; and that afterwards, on the 30th of May, 1855, Peaselee sold and assigned all his interest in the certificates issued to him as aforesaid, to the said Damman, and that on the 11th day of July, 1855, Damman exhibited to the state treasurer the said certificates and assignments, and offered to pay and tendered in legal coin, the amount of principal, interest, costs, damages and penalty, and charges in any manner due on said certificates, and demanded of him that he indorse the receipt of such payment on said certificates, but the said treasurer refused to receive the money so tendered and to indorse the receipt thereof as aforesaid.

That afterwards, on the 14th day of July, 1855, the said Damman offered to the commissioners to pay up in full the whole amount for principal, interest and charges on said lands, and to surrender the certificates, and take a patent for said lands ; but the commissioners refused to permit him to pay up as aforesaid, and refused to receive any sum of money, and to cancel the certificates, and to issue patents for said lands.

The relator prayed for a mandamus, commanding the said commissioners to accept and receive from the said relator, the amount of the principal, interest, costs and charges on said certificates, and indorse a final and full receipt thereon, and to cause patents to be issued for said lands, according to the terms of said certificates, and in pursuance of the statute, &c.

Upon the filing of the relation duly verified, an alternative writ was awarded, which set out the facts as stated in the relation. After the return of the writ, the following stipulation of facts was agreed upon and filed, upon which the cause was heard :

"It is hereby stipulated that the demurrer be withdrawn, and the case heard upon the facts stated in the alternative writ, and the following facts. It is hereby further stipulated and agreed in the above cause, that the facts, in addition to those which appear in the petition and alternative writ of mandamus, are, that after the said lands were forfeited as stated in said petition, and

before a tender was made to the school commissioners, of the principal, interest and damages, and a demand made for a patent by the said relator, John S. Byrne entered the same at private sale, and paid the requisite portion of the principal and interest, and obtained a certificate therefor, from the said commissioners under a sufficient notice, and a sufficient publication thereof, under chapter 43 of the Session Laws of 1853."

*D. R. Wheeler*, for the relator.

*H. S. Orton*, for the respondents.

*By the Court*, COLE, J. We are very clearly of the opinion that a peremptory writ of mandamus must be awarded in this case. On the 13th of November, 1851, when the assignor of the relator purchased of the commissioners of the school lands, the land mentioned in the relation, the following provisions of chapter 24 of the Revised Statutes were in full force and operation:

Section 15. "In case of the non-payment of either principal or interest when due, according to the terms of the certificate of sale, such certificate shall become void from the time of such failure, and the purchaser or purchasers shall forfeit all right and interest in the land described in such certificate, and the commissioners may take immediate possession thereof, and resell the same as hereinafter provided."

Section 16. "At any time before a resale of such land, the payment of the sum due, with interest and all costs occasioned by the delay, together with five per cent. damages on the whole sum owing for such land, shall prevent such resale and revive the original contract."

Section 17. "If on a resale of such land, the same shall produce more than sufficient to pay the sum owing therefor, with interest and costs, and five per cent. damages, on the amount of purchase money unpaid, the residue, when collected, shall be paid over to the former purchaser, or his legal representatives."

Section 27. "All school and university lands which shall be forfeited by the non-payment of either principal or interest, before the same shall be subject to private entry, shall be re-offered

for sale at public auction, and the minimum price of all parcels or lots so forfeited, upon which improvement shall have been made, shall be such as shall have been determined in the manner provided in the 46th section of this chapter."

There can be no doubt but these express provisions of the statute, at the time the contract of sale between the purchaser and state was made, entered into, and became a part of such contract, and no subsequent law could be enacted which could change the conditions or impair the obligations imposed by them. *Green vs. Biddle,* 8 *Wheat.* 1; *Bronson vs. Kinzie,* 1 *How.* 311; *McCracken vs. Hayward,* 2 *id.* 608; *Butler vs. Palmer,* 1 *Hill,* 325. The purchaser or his assignee had the right, under the 16th section just cited, to revive the original contract at any time before a resale of the land, by paying the sum due with interest, and all costs occasioned by the delay, and five per cent. damages upon the whole sum due; and by the 27th section, forfeited school lands were not subject to private entry until they had been re-offered for sale at public auction.

Such were the conditions of the contract entered into between Peaselee, the assignor of the relator, and the commissioners in behalf of the state. Now the question is, how have these conditions been kept and fulfilled by the parties?

The material facts of the case as agreed upon by the relator and the commissioners, are substantially as follows:

Peaselee made default in paying the interest for the year 1853, and upon the 30th of May, 1855, assigned the duplicate certificate to the relator. The relator on the 11th of July, 1855, presented to the state treasurer, at his office, the duplicate certificate assigned to him, and then offered to pay the amount of principal, interest, costs and damages, and all sums of money due thereon, and demanded that the same should be received and receipted by the treasurer upon the certificate. The treasurer refused to receive the money or make the indorsement upon the certificate; the same application was made on the 14th of July, 1855, to the other commissioners, and a demand made for a patent, which was also refused. After the lands became forfeited, and before a tender was made to the commissioners of the amount due upon the certificate, and all damages and costs, and a demand made for the patent, John S. Byrne entered the

land at private sale, and paid the requisite portion of principal and interest, and obtained a certificate therefor, from the commissioners, after a sufficient notice and publication thereof, under section 3, chapter 43, Sess. Laws, 1853. And further the land had not at any time been offered for sale at public auction since November 13, 1851.

Under these circumstances, we think it an incontestable proposition, that the entry of Byrne was null and void. The lands were not subject to private entry, and could not be, until after offered for sale at public auction. Not only upon the ground of public policy, that the state was interested in having the land offered at public sale, but the purchaser had a right to insist upon it, as it was a part of the contract which the commissioners, in behalf of the state made with him, that it should be thus offered, before it should be subject to private entry. The purchaser had a direct and immediate interest in the proceeds of the sale after the state was paid. He, therefore, has the right to demand that the lands should be sold at public auction. Until that was done, no private entry could be valid. The act of 1853 does not aid the matter; for it was not competent for the legislature to change an existing contract so as to materially impair the rights of parties under it, even should it attempt it. It is by no means evident that the legislature intended that section 3, chapter 43 of Session Laws of 1853, should apply to any previous sale. However that may be, it is very manifest that the act of 1853 cannot operate injuriously upon rights and interest which had become vested in 1851.

Peremptory mandamus awarded.