January Term, 1861.

ROBINSON
v.
HOWE et al.

| 13 | 341 |
| 92 | 360 |

## ROBINSON vs. HOWE and another.

When land has been sold for taxes under a law which provided that the owner might redeem it within a specified time after the sale, it is not in the power of the legislature, by a subsequent act, although passed before the expiration of that time, to extend the privilege of redemption for a *longer* period. To do so would impair the obligation of the contract.

Such an act to extend the time for redemption does not affect the rights of an assignee of a tax certificate issued before the passage of the act, although the assignment was made and the tax deed was executed to him after its passage, and the deed was in the form which that act prescribed.

APPEAL from the Circuit Court for *Dodge* County.

Trespass, for breaking the plaintiff's close. Answer, that the close, at the time when, &c., was the freehold of one Loomis, and that the defendants, as his servants, broke and entered, &c. The action was brought in Columbia county, and the place of trial changed to Dodge county. On the trial, the plaintiff proved title derived under an entry at the U. S. land office in July, 1848, and that the defendants had entered upon the land and cut the timber, &c. The defendants gave in evidence a tax deed of the land from Columbia county to James M. Howe, dated April 19, 1853, and recorded the same day. The deed recited that the county of Columbia, of which James M. Howe was assignee, purchased the land from the treasurer of the county at a tax sale on the 9th of April, 1850, and that it appearing that the land was unredeemed, the county thereby in consideration of, &c., granted and conveyed it to said James M. Howe. The defendants proved also a title in Loomis through several mesne

January Term, 1861.

ROBINSON
v.
HOWE et al.

conveyances from Howe, and that they entered, &c., by Loomis's direction. The plaintiff then offered to prove that within one year after the recording of the tax deed, one Nelson, who then held a deed for the land, made a tender to Howe of all the taxes, costs and fees disbursed on account of said land, by him, up to that time, with 25 per cent. interest thereon. To this proof the defendants objected, on the ground that the act of 1852, under which the tender was alleged to have been made, was unconstitutional. The court sustained the objection. Verdict and judgment for defendants.

*J. J. Enos*, for appellant:

1. It must affirmatively appear that James M. Howe was the owner of the tax certificate at the time when the act of 1852 took effect, before the defendants can question the validity of its provisions. 4 Monr., 95, 526; 5 id., 131. If he acquired title to it after that time, then upon the principles of construction contended for by the respondent, the provisions of that act became a part of the contract. And even if he was owner of the certificate at that time, and afterwards took a deed in the form provided in that act, he thereby waived any constitutional objection to the act. *The People vs. Murray*, 5 Hill, 468; *Baker vs. Braman*, 6 id., 47; *Embury vs. Conner*, 3 Coms., 511. 2. There was no "contract" in this case, within the meaning of the constitution. The term, as there used, does not include interests growing out of measures of public policy. Sedgwick on S. & C. Law, 618 and 633; 10 How. (U. S.),416; 3 id., 551; 4 Seld., 110; 4 Kern., 22; 9 B. Monr., 449. 3. If there was a contract, the act of 1852 did not impair its obligation. Retrospective laws, acts divesting vested rights, and acts relating to the remedy, do not violate the provisions of the constitution above cited. *Calder vs. Bull*, 3 Dall., 386; *Satterlee vs. Matthewson*, 2 Peters, 413; *Watson vs. Mercer*, 8 Peters, 88; *Balt. & Susq. R. R. vs. Nesbit*, 10 How. (U. S.), 395; *Mason vs. Haile*, 12 Wheat., 379; *Wilkinson vs. Leland*, 2 Peters, 627; *Stocking vs. Hunt*, 3 Denio, 274; *Van Rensselaer vs. Snyder*, 3 Kern., 299; 4 Kern., 22; 1 Hill, 324; *The People vs. Livingston*, 6 Wend., 526.

*Abbott, Gregory & Pinney,* for respondents:

January Term, 1861.

ROBINSON
v.
HOWE et al.

By the law in force at the time of the tax sale, the purchaser was entitled to an absolute deed at the end of three years from the sale, and the estate was not liable to be defeated by a redemption after the tax deed was recorded. This was the law of the contract, and determines the rights of the parties under it. *Sturges vs. Crowninshield,* 4 Wheat., 122; *Ogden vs. Saunders,* 12 id., 257. The effect of the law of 1852 was to take away from the purchaser at a tax sale made prior to its passage, the right to an absolute deed, and attach a new condition to the contract of sale, and the law, to that extent, impairs the obligation of contracts, and is void. *Ogden vs. Saunders,* 12 Wheat., 213; *Blanchard vs. Russell,* 13 Mass., 16; *King vs. Dedham Bank,* 15 id., 447; *Kimberly vs. Ely,* 6 Pick., 451; *Bronson vs. Kinzie,* 1 How. (U. S.), 311; *McCracken vs. Hayward,* 2 id., 608; *Quackenbush vs. Danks,* 1 Denio, 128; *Lewis vs. Brackenridge,* 1 Blackf., 220; *Bruce vs. Schuyler,* 4 Gilm., 221.

*By the Court,* PAINE, J. The only question presented in this case, is whether it was error for the court below to rule out the evidence offered to show a redemption from the tax sale under which the defendants claimed. The sale was made while the provisions of chap. 15, R. S., 1849, were in force, by which the purchaser was entitled to an absolute deed, unless the land was redeemed within three years from the sale, provided, however, that the owner might redeem even after the deed was given, but before it was recorded. There is no claim here that there was any redemption within the three years, or before the deed was recorded. But the evidence offered was of a redemption within one year after it was recorded. This was a good redemption if sec. 3, chap. 503, Laws of 1852, which authorized it, is valid; otherwise, not.

January 8.

If this section is invalid, it is on the ground that it impairs the obligation of the contract of sale, and is therefore within the prohibition of the constitution of the United States. The counsel for the appellant contends that a sale of lands for taxes does not constitute such a contract as was

within the contemplation of that prohibition, but that it is rather to be classed among those "measures of public policy"which have been held not to be affected by it. In support of this view, he referred to the following cases: *Maryland vs. R. R. Co.*, 3 How. (U. S.), 534; *Butler vs. Pennsylvania*, 10 id., 416; *Moore vs. Mayor, &c.*, 4 Seld., 110; *Conkey vs. Hart*, 4 Kern., 22; *Fultz and wife vs. Fox*, 9 B. Monroe, 499. I fully concur with the doctrine of these cases; and I have before, in the case of *Van Baumbach vs. Bade*, [9 Wis., 559,] stated that in my opinion the provision of the constitution of the United States under consideration had been extended to matters not within its intention, so as unwarrantably to cripple and restrict the legislative power of the states. Matters relating to the remedy, I hold to be entirely subject to state control, and also that those rights which are derived entirely from the law, in pursuance of its general policy, may be changed or destroyed by law.

The liability of the husband for the debts of the wife contracted before marriage, is a fair illustration of this class of rights. It does not arise from any contract made by the husband with the creditors of the wife. Neither is it any part of the marriage contract. For it cannot with any reason be said that parties entering into a marriage contract, stipulate that they shall mutually enjoy all the privileges; and be liable to all the obligations, which the law at that time, merely as a part of its general policy, grants to or imposes upon married persons. They contract simply to enter into the marriage relation, knowing that these privileges and obligations are imposed or given by the law, and may be taken away or modified by it. Take, for example, the right to personally chastise his wife, which, it is said, the common law gave the husband. Suppose such were the law here, and a marriage was contracted while it was in force. If the legislature then, deeming such a power productive of oppression, should take it away, could it for a moment be said that such a law impaired the obligation of the marriage contract? Clearly not. The right was not derived from the contract, but from the law, and it is not in the province of parties, by forming such a contract, to prevent the state from

changing its policy with respect to the general rights and
privileges which the law gives to the people, or to particular
classes of them.

The same remarks are applicable to the wife's right of
dower, and many other rights of a similar character. The
law gives them, and while they are still inchoate, and have
not ripened into an actual interest in property, the law may
take them away. And this, I think, is the extent of the
principle established by the cases referred to.

But while conceding this doctrine, I think it inapplicable
to this case, and that there is a distinction between those
rights which the law gives to, or obligations which it impo-
ses upon, persons in certain relations, merely in carrying out
its own view of policy, and independently of any stipu-
lations which the parties may have made, and those rights
which the law itself, even in carrying out some matter of
general policy, authorizes to be made the subject of express
contract between the parties. In the former case, the rights
being derived entirely from the law, and not from the con-
tract, laws changing them are not within the prohibition.
But in the latter case, although the law authorized the rights
to be acquired, yet it authorized them to be acquired only
by a contract stipulating for them, and having been so ac-
quired, such contract must be held to be within the protec-
tion of the constitution. The question therefore is, not
whether the right was acquired in the execution of some
measure of public policy, but whether it was derived from
the law only, or was stipulated for in a contract which the
law itself authorized the parties to enter into. In the former
case, the law may withdraw the right it granted; but in the
latter, having found it necessary in accomplishing its objects,
to resort to the agency of actual contracts, it cannot, after
they are made, impair their obligation.

Thus it is a part of the general policy of the law to divide
the state into counties, to establish county seats and provide
public buildings, where justice may be administered and
public business transacted. In doing this it necessarily au-
thorizes contracts to be entered into for their erection. But
who would say, after such contracts were entered into, that

they were not within the constitutional provision, because made in executing a "measure of public policy?" No one, I think. So it is the policy of the law to provide for the sale of the school lands, and it authorizes sales to be made and certificates to be issued, giving the purchasers certain rights. But could it be said after this was done, and the purchaser had paid his money and taken his contract, that if the legislature desired to change its policy in regard to the school lands, it could take away the interest which the contract gave, or impair its obligations in any particular? No one would claim it. Indeed, this court has decided in the case of *Damman vs. School Commissioners*, 4 Wis., 414, that the state could not, in respect to contracts already made, make the lands subject to private entry on default of the purchaser, without first offering them at public auction, because the law at the time the contract was made, required them to be so first offered. Now whatever doubt might have been raised as to whether this provision of law did not relate to the remedy merely, and therefore did not constitute any part of the subject matter of the contract, there can be no doubt of the correctness of that decision when applied to those provisions of the law which did determine those rights which · the purchaser acquired by the contract, and the extent and meaning of its stipulations. And I think the same principle is as clearly applicable to the case under consideration. Here the state sold the land of one of its citizens for taxes. Of its power to sell the land there is no question. In determining its policy in regard to it, it did not cut off the rights of the owner by any summary proceeding, but gave him three years after the sale, and until the tax deed was recorded, in which to redeem. So far as his right of redemption was concerned, it was not derived from any contract, but was given by the law only, and the time within which he might exercise it might be shortened by the legislature, provided a reasonable time was left in which to exercise it, without impairing the obligation of any contract. *Butler vs. Palmer*, 1 Hill, 324; *Smith vs. Packard et al.*, decided by this court at the present term, [12 Wis., 371.] But the rights of the purchaser stand upon a different footing. They are derived

from the contract, which the law authorized to be made. He contracted at the sale for a deed of the kind which the law then authorized him to contract for. That was an absolute deed at the end of three years, liable to be defeated only by a redemption before it was recorded. It seems to me clear, therefore, that when the law of 1852 said he should not have such a deed, but should take one liable to be defeated by a redemption at any time within a year after it was recorded, it directly impaired the obligation of the contract. I think it might just as well provide that, instead of any deed, he should take a lease for years. The answer in either case is, that the thing given is different from what he contracted for, and the law cannot compel him to take it without impairing the obligation of his contract. I think, therefore, that the third section of the law of 1852 was void, as a violation of the contract with the purchaser.

The counsel for the appellant also contends that it should appear that the defendant acquired title to the tax certificate before the law of 1852 took effect, and that if he acquired it afterwards, then, by the reasoning of the respondent, the provisions of that act became a part of his contract, and he would be bound by it. But this is certainly an unwarranted application of that reasoning. For that applies only to valid provisions of law, and such as have some effect upon the meaning of the contract itself. But if this section was in conflict with the constitution, then it was utterly void. And there is no reasoning by which a void law can become a part of a contract. I think therefore it makes no difference whether the assignee of the certificate acquired it before or after the law of 1852 took effect. If in the hands of the original owner it was protected by the constitution, it is equally so in the hands of the assignee. Nor should the fact that he took a deed in the form prescribed by the act of 1852, estop him from contesting the validity of section 3. The mere form of the deed was a matter of no great consequence, and might be prescribed by the legislature, provided they gave him such a deed as his contract entitled him to. But it would be strange if, when, by law and by his contract, he was entitled to a deed, he should, by taking such a one as the

January Term, law said he should take, estop himself from questioning the
1861.
validity of another provision of law which deprived him of a
THE TRUSTEES, substantial right.   It is not at all like the case of *People vs.*
&c., OF NEW
ELM,        *Murray*, 5 Hill, 468, where a man acted under a statute au-
v.
HOESSLI et al. thorizing him to take other people's property, and then
sought to deny the validity of its provisions by which he was
required to pay for it.

The judgment should be affirmed, with costs. .

DIXON, C. J., took no part in the decision of this case,
having been of counsel.