June Term,
1861.

LAWTON
v.
HOWE.

</div>

---

## LAWTON vs. HOWE.

A assigned for value to B "all his right, title and interest" in certain school land certificates, both parties being ignorant that there was any prior claim to the lands described in them, or that any other persons held certificates for said lands, but the certificates assigned, though valid upon their face, were in fact void, for the reason that prior certificates had been issued for the same lands to other persons, and although those persons had made default in paying interest, the lands had not been offered for resale at public auction, as required by law. *Held*, that the assignee in such case is entitled to recover back the consideration paid, upon the principles established in *Hurd vs. Hall*, 12 Wis., 112.

But where the assignee in such case, while in possession of the land and before surrendering the invalid certificates, buys in the outstanding valid certificates for a smaller sum than he paid the assignor, he is entitled to recover only the amount thus paid to perfect his title.

The fact that the assignee surrendered the invalid certificates to the school land commissioners for cancellation, and received the amount which had been paid upon them by the assignor, is no bar to a recovery; but the amount thus received must be deducted from the amount paid to perfect the title, and the assignee may recover the residue.

<div style="text-align:right">

14  241
79  487

14  241
88  285

14  241
109  184

</div>

It was not necessary for the assignee to offer to return the certificates to the assignor, as they could have been of no use to him except to enable him to withdraw the money which had been paid upon them.

For the value of the use of the land and of the wood cut from it by the assignee, while in possession under the void certificates, he is responsible to the holder of the paramount title and not to the assignor.

On demurrer to an answer the whole record is to be considered, and if the complaint is bad in substance, judgment must be rendered for the defendant.

In an action to recover back money paid by mistake, the complaint is defective if it does not allege a demand of the money before the commencement of the suit. This is matter of substance, and the defect is not waived by answering over.

APPEAL from the Circuit Court for *Dane* County.

The complaint in this case alleged that on the 26th of October, 1855, the defendant, being the holder of four certificates issued to him in 1854 and 1855 by the commissioners of school and university lands of this state, agreed to sell and transfer all his title and interest in said certificates to the plaintiff, for the sum of $645.75; and the plaintiff, upon the defendant's representation that he or his assigns were entitled to a patent from the state for the lands described in said certificates upon payment of the sums therein mentioned, agreed to purchase the same, and the defendant indorsed on the back of said certificates, in writing under his hand and seal, a transfer to the plaintiff of all his right and title in said certificates and in the lands described in them, and the plaintiff thereupon paid the defendant $178.75, and gave his notes for the residue of the price, which he has since paid. It alleged also that from the representations of the defendant and from an examination of the certificates, the plaintiff believed (and thinks the defendant believed) that the certificates gave the holder a right to demand patents from the state for said lands, upon payment of the balance of the purchase money; and that neither the plaintiff nor the defendant had any knowledge that there was any prior or paramount claim to said lands, or that any other person held any certificate for the purchase thereof; but that after the payment of said moneys to the defendant, the plaintiff discovered that the lands described in said certificates had been sold by the said commissioners to certain other persons in 1850, and although those persons had failed to

pay the interest on the certificates issued to them for said lands, yet that the lands had not been offered for resale at public auction as required by law, and consequently the certificates issued to those persons still remained in full force, and the certificates assigned by the defendant to the plaintiff were null and void. It also alleged that upon this discovery, the plaintiff surrendered said certificates to said commissioners, and received from them $167.33 which had been paid to them by the defendant as part payment of the purchase money; and demanded judgment for the sum of $478.42, with interest &c.

The answer denied that the defendant represented to the plaintiff that the certificates, or the assignment of them, would pass any interest in the lands described therein, and alleged that the defendant merely sold all his title and interest in the certificates, and that the plaintiff possessed as full knowledge of their validity, and of all the facts concerning them and the first sales and certificates mentioned in the complaint, as the defendant did. It also alleged, for a further defense, that the defendant, immediately after he received said certificates from the state, took possession of the lands described therein, and made improvements on them to the value of $100, and delivered possession of the lands to the plaintiff, who continued in possession under said certificates until he surrendered them to the commissioners to be cancelled, and that while the plaintiff was in possession he cut and sold from the land cord wood of the value of $100 exclusive of the expense of cutting and drawing it, and that the use of the lands while the plaintiff occupied them under said certificates was worth $150. It alleged for a further answer, that in the year 1857, and before the plaintiff surrendered said certificates to the commissioners, he purchased in and took an assignment of the *prior* certificates referred to in the complaint, for $200, and was enabled to buy them at that price because he was the holder of the certificates assigned to him by the defendant. It alleged also that the plaintiff had never offered to rescind the contract, or to re-assign or deliver back said certificates.

The plaintiff demurred to the answer as not stating facts

June Term, 1861.

LAWTON
v.
HOWE.

November 2.

sufficient to constitute a defense; the demurrer was overruled, and the plaintiff appealed.

A. A. Jackson for appellant, in support of the plaintiff's right to recover, cited Hurd vs. Hall, 12 Wis., 112; Adams' Eq., 188; Hitchcock vs. Giddings, 4 Price, 135; 1 V. & P., 389; Colyer vs. Clay, 7 Beav., 188; 1 Story's Eq., §§ 142–3; 2 Kent (5th ed.), 468–9; 11 Pet., 71–3; Bingham vs. Bingham, 1 Ves. sen., 126; Miles vs. Stevens, 3 Penn. St., 21; Dodd vs. Sanford, 2 Day, 437; Newland on Con., 432; 2 Smith's L. C., 343; 17 N. Y., 499.

I. C. Sloan for respondent.

By the Court, DIXON, C. J. This is an action to recover back money paid and received under a mistake, and comes to this court on appeal from an order overruling a demurrer to the answer. The facts stated in the pleadings, so far as they are the source of any questions of law, are, with two exceptions, the same as those in the case of Hurd vs. Hall, 12 Wis., 112. The plaintiff in that case, before the commencement of his action, offered to return the void certificates, with a re-assignment of his interest, and demanded a surrender of his notes, and that the money be refunded, which were refused; and those facts were alleged in the complaint and proved on the trial. In this, the complaint contains neither of these averments. On the other hand, the appellant admits that after discovering that the certificates were void, he surrendered them to the commissioners, who thereupon refunded to him the principal and interest which had been paid upon them, and this sum he offers to allow to the respondent in reduction of his demand. With these exceptions, therefore, the judgment in that case must be decisive of this, unless, as was strongly urged, we should, upon further consideration, conclude that it was erroneously given. We have carefully reviewed the principles and authorities upon which the decision was placed, and are still satisfied of its correctness.

The appellant insists that the recovery in that case was too small; that it should have been the entire sum paid by the plaintiff to the defendant. One of the reasons given is, that

June Term,
1861.

LAWTON
v.
HOWE.

we held that, for the purpose of sale and transfer, the certificates were to be regarded in the light of *choses in action.* It is said to follow from this that the amount recovered should have been the full sum paid, as in the case of a note or bill which proves to be void for some secret defect. Admitting, for the sake of the argument, that such is the invariable rule in the case of bills and notes, how does it sustain the conclusion? The instruments being void, the purchaser seldom derives any benefit whatever from them, and nothing less than the consideration paid would make good his loss. Such were *Young vs. Cole,* 3 Bing. (N. C.), 724, and *Gompertz vs. Bartlett,* 24 E. L. & E., 156. But in these cases it is not so. Aside from the transfer of the certificates, the purchasers were put in possession of valuable real estate, which they quietly and peacefully retained until the commencement of their actions, and by means of which they were enabled to buy in the outstanding claims at a price considerably below what they agreed to pay and what they must have considered the fair value of the land. In the answer before us it is expressly averred that the appellant was thus enabled to purchase the outstanding certificates for less than one-third the sum agreed to be paid to the respondent; and would it be equitable or just to allow him to retain the advantage thus gained—to keep the land at the diminished price—and yet refuse payment of the purchase money? We think not. It seems to us that it would be a violation of the clearest principles of equity and justice. We cannot, because these certificates are, by statute, made assignable, and are thus, as to sale and transfer, affected with the incidents of *choses in action* (*Mowry vs Wood,* 12 Wis., 413), close our eyes to the real nature of the transaction, which was the sale and purchase of land, and say that the appellant should recover back the same amount as if he had bought a void promissory note. The land being the real subject of the contract, the case must, in this respect, be governed by rules applicable to property of that kind.

But it is not true, as to notes and bills, that the vendee may always recover back the entire consideration paid. If he has received any profit or advantage from the transfer,

it must be deducted, and he is only entitled to the residue, or such sum as will make him whole. In *Jones vs. Ryde*, 5 Taunt., 488 (1 E. C. L., 166), the holders of a forged navy bill having, through the liberality of the government, received a part of the money, the action was instituted for the balance only, and it is very evident that no more could have been recovered.

*Hurd vs. Hall* was a proceeding in equity to compel a surrender of the notes, and for the restitution of the money which had been paid. This is an action at law, in the nature of an action for money had and received, to recover back the price paid. It is a kind of equitable action. "This is a very extensive and beneficial remedy, applicable to almost every case where the defendant has received money which, *ex æquo et bono*, he ought to refund." 3 Bl. Comm., 163. "Great benefit arises from a liberal extension of the action for money had and received; because the charge and defense in this kind of action are both governed by the true equity and conscience of the case." Lord MANSFIELD, in *Longchamp vs. Kenny*, Doug., 137. "It is beneficial to the defendant. It is the most favorable way in which he can be sued; he can be liable no further than the money he has received; and against that he may go into every equitable defense upon the general issue; he may claim every equitable allowance; in short, he may defend himself by every thing which shows that the plaintiff, *ex æquo et bono*, is *not entitled* to the *whole* of his demand or to any *part* of it." *Idem* in *Moses vs. Macferlan*, 2 Burr., 1005. "The plaintiff can recover no more than he is, in conscience and equity, entitled to; which can be no more than what remains after deducting all just allowances which the defendant has a right to retain *out of the very sum demanded*. This is not in the nature of a *cross* demand or *mutual* debt; it is a *charge* which makes the *sum* of money received for the plaintiff's use so much *less*." *Idem* in *Dale vs. Sollet*, 4 Burr., 2133. It follows from these principles that there can be no fixed legal rule of damages in such actions, and that it is immaterial that the present parties are before a court of law instead of a court of equity. In no case can the plaintiff have judg-

ment for more than the exact justice and equity of the case demand.

It is furthermore insisted that the rule of damages was wrong, because the assignment of the certificates created no relation of trust or confidence between the parties—that the contract was *executed.* We are not prepared to dispute this proposition; nor have we asserted to the contrary, though it would be hard to distinguish between these cases and that of *Thredgill vs. Pintard,* 12 How., 24. Reference was made to that case, not to establish the relation of the parties, but to show what we deemed to be the true sum which the plaintiff was entitled to recover. It is a general principle that a tenant, trustee, mortgagee or purchaser—in short, whoever comes into possession of real estate by recognizing the title of another, will not be permitted, while so possessed, to dispute that title, or to purchase an outstanding claim; or if he does, that it will enure to the benefit of the person whose paramount ownership has thus been acknowledged. 2 Johns. Ch. R., 33; 3 Peters, 43; 12 id., 264; 5 Yerg., 398; 8 id., 502; 4 Mon., 297; 2 A. K. Marsh., 242; 12 How., 24. But the principle goes no further. Therefore one who enters and claims in his own right and for his own benefit, is not thus estopped. His possession is adverse to that of his grantor, as well as to the rest of the world. He is under no obligation to maintain his grantor's title, but may if he chooses, fortify it by the purchase of any other which may protect him in the quiet enjoyment of the premises. 7 Wheat., 548; 4 Litt., 274. This was the position of the present appellant as to all persons save the state. Hence we cannot say that he was guilty of any bad faith or moral wrong in purchasing the outstanding certificates; but the bad faith and wrong consist in his unjustifiable attempt to withhold from the respondent compensation for the benefits which actually accrued to him from his contract with the latter. The rule, therefore, does not depend upon the existence of a relation of trust, but rests on the general principles applicable to actions for money had and received.

Again, it is said that the rule of damages in actions of covenant, where it appears that the plaintiff has acquired an

outstanding title at a low price, is no standard by which to measure the damages in this case. It strikes us that there is the strongest analogy between the cases. In both, the real object of the purchase is the land. Covenants are intended to secure to the grantee the estate purchased according to the terms of the conveyance. The appellant expected nothing more from the assignment of the supposed certificates. The estate transferred, or supposed to be, is presumed to be a fair equivalent for the money paid, and the rents and profits for the interest. The grantee affirms this to be so by the act of purchasing. If therefore he gets the estate at his own valuation, he cannot complain that he has been wronged. If he fails to get that, then he may reclaim the purchase money; but he ought not to have both. In actions for the breach of covenants of seisin and warranty, the prevailing rule of damages is, the purchase money and interest for six years. *Rich vs. Johnson*, 1 Chand., 19; *Blossom vs. Knox*, 3 id., 295. This is a strictly legal rule in cases where no fiduciary relation whatever exists between the parties; and yet it is not inflexible. That injustice may not be done, it yields to those facts and circumstances, which, in particular cases, would render its application inequitable. *Leland vs. Stone*, 10 Mass., 459; *Baxter vs. Bradbury*, 20 Me., 260; *Tanner vs. Livingston*, 12 Wend., 83. When the grantee in possession purchases in an outstanding paramount title, he can recover no more than the sum paid, with compensation for his trouble and expenses. *Leffingwell vs. Elliott*, 8 Pick., 455; *Same Case*, 10 id., 204; *Loomis vs. Bedel*, 11 N. H., 74; *Spring vs. Chase*, 22 Me., 505. This being the rule in actions of that kind, how can we resist its application in cases like the present? Clearly we cannot, unless we can say that the necessity of applying a rule diminishes as the reasons for its application increase and become more urgent and satisfactory.

The counsel for the respondent, though apparently contented with the rule of damages, vigorously assails the other points of the former decision. In reply to the main feature of his argument—that the certificates were not worthless and void—it is sufficient to refer to the case of *Damman vs. The*

*Commissioners*, 4 Wis., 414, which he so severely criticises. It was there held that such entries were *null and void*. That decision has since become the rule by which a vast amount of property has been acquired and is still held. The mischiefs and oppression which would result from its being now changed would be enormous. *Stare decisis* is, therefore, a good answer. But aside from this and the arguments drawn from the provisions of the statute in relation to the forfeiture of the land by a non-compliance with the conditions of the certificate, which I admit have much force, I seriously doubt the position that the legislature may, through the commissioners of the school and university lands, enter into contracts which will bind the state to the payment of damages in cases where it appears that the state has no title or right to convey the lands contracted to be sold. The commissioners are constitutional officers. The board is organized by the constitution for the transaction of a particular business and the performance of specific duties. They are to sell the school and university lands and invest the funds arising therefrom. Const., Art. X, sec. 7. The next section declares that provision shall be made by law for the sale of such lands, and points out the manner in which it is to be done. The legislature as well as the commissioners are mere public agents, and these affirmative prescriptions impliedly limit the powers of both; and it may well be doubted whether the former can, through the commissioners and under the guise of selling school and university lands, contract to sell any or all of the lands in the state, regardless of the title, and bind the state or the people; or, having once disposed of the school and university lands, whether it could afterwards multiply the sales innumerably, compelling the state, on each successive contract, to pay damages as for the breach of a valid obligation. Such proceedings, if not opposed by the letter, would be clearly contrary to the spirit and intention of the constitution.

But, be this as it may, the legislature itself, so far as it concerns the present controversy, has put the question at rest. It was provided by statute, at the time these certificates issued, that in case of the sale of any school or univer-

sity lands, made by mistake, or not in accordance with law, or obtained by fraud, such sale should be void; and that no certificate of purchase issued thereon should be of any effect, but the holder of any such certificate should be required to surrender the same to the commissioners, who should thereupon refund the amount paid for the land described in such certificate. Sec. 101, chap. 24, R. S., 1849. The same provision is contained in the present revision. Sec. 121, chap. 28. This was part of the law of the state, of which all purchasers are presumed to have had knowledge, and subject to which they received the certificates. It constituted one of the conditions of every sale, and settled the rights of the state and of the purchaser whenever it was made by mistake or not in accordance with law. The sale was to be void, and the certificate of no force or validity. It was long ago judicially determined that these sales were illegal, and that concludes the argument. It can no longer be contended that the certificates were of any effect, either as conveyances of an interest in the lands, or as the foundation of a claim for damages against the state. They were worthless for either purpose, and a transfer of them carried nothing except the right to receive the money to be refunded.

Neither do we think that the decision was any infringement of the maxim *caveat emptor*. The case was peculiar, and may stand either on the ground of a mistake of fact, or as an exception to the rule of *caveat emptor*, which the authorities show to be well established on sales of written instruments or things in action founded upon them. To the authorities there cited may be added *Jones vs. Ryde, supra.* The source of the liability is, perhaps, more correctly described as an implied warranty that the instruments sold are of the kind and description which they purport on their face to be. 1 Story on Con., sec. 411. As such it resembles the implied warranty of title on sales of goods. The defect is of such a nature that it is useless to scrutinize and examine the instrument. No skill or watchfulness at the time of sale will enable the purchaser to detect it. Being without the means of self-protection, it may well be said that he relies upon the responsibility of the seller that the instrument is

what he offers it for, and that the rule of caveat emptor does not apply.

It follows from what has been said, that it was needless for the appellant to return or offer to return the certificates before he could maintain his action. They were void, and of no use to the respondent except to enable him to withdraw the money which had been paid on them. The appellant has done this and allowed him the amount. It was a beneficial act, of which he cannot complain. *Jones vs. Ryde, supra,* is a similar case. The holders of the altered navy bill deposited it with the commissioners of the pay office, received the sum for which it was originally given, and brought suit for the residue. The court observe that everything which the plaintiff had done was done for the good of the defendant. Moreover the statute required the appellant to surrender the certificates, and it would be very singular if a performance of this duty should be construed as a forfeiture of a private right of action.

It follows also that the answer is good—at least the third special defense, so far as it professes to go. It avers a purchase of the outstanding certificates for a less sum than the price paid to the respondent. The demurrer is to the whole answer, and was therefore properly overruled. Van Santv. Pl., 706; 1 Chitty's Pl., 665. The second special defense is clearly bad. For the value of the wood and the rents and profits the appellant was responsible to the holder of the paramount title, and not to the respondent. As to the improvements made by the respondent, the circumstances under which they were made are not distinctly specified so that the court can determine that he was entitled to pay for them. It should distinctly appear that he was in possession, holding adversely by color, or title asserted in good faith. R. S., chap. 141, sec. 33. In that case it is not improbable that the respondent would be entitled to their value. This question, however, will cease to be of practical importance, provided the respondent succeeds in establishing the other branch of his defense. For then the measure of the appellant's recovery will be the amount paid for the outstanding certificates, after deducting the sum received from the com-

June Term,
1861.

missioners, without regard to the value of the improvements.

The demurrer was properly overruled for another reason. On demurrer the whole record is to be considered, and if it appear that the complaint is bad in substance, judgment must be rendered for the defendant. The complaint is defective in not alleging a demand of the money before the commencement of the action. This is matter of substance, and the defect is not waived by answering over. The money was received by the respondent as a payment, not as a loan; and it would be most unjust and oppressive to subject him to an action before demand, or notice that he is required to refund. *Abbott vs. Draper*, 4 Denio, 53. In most actions of this kind it will be found that a demand was made before they were commenced; and every principle of law and justice seems to require it.

Order affirmed.