## CARITHERS V. WEAVER AND WEAVER.

1. DEED—*Who may not impeach for Fraud or Want of Consideration.* A person having no title to, or equities in, a tract of land, cannot question the consideration or good faith of one of the conveyances in the chain of title thereto. Nor can one holding simply a tax title thereto.

2. TAX TITLE—*Who cannot acquire.* A person leasing land, and by the lease contracting to pay all taxes thereon, cannot acquire a valid tax title on account of taxes due and payable during the continuance of such lease.

3. TAX DEED—*When void—Statute of Limitations.* A tax deed issued to a tenant or lessee who had contracted or agreed to pay the taxes for which such deed was issued is void, and does not start the statute of limitations running.

4. ESTOPPEL. A party entitled to redeem certain real estate from sale on execution, prior to the sale, urged the purchaser to purchase, and told him if he bought he should not be disturbed; *held,* no estoppel.

### *Error from Johnson District Court.*

EJECTMENT, brought in the district court of Johnson county, to recover the possession of lots six and nine, in block fifty-one in the town of Olathe. The plaintiff in error, *Samuel Carithers,* who was plaintiff below, claimed title by virtue of a deed from his father, Noble Carithers, of date Sept. 29th, 1862. Defendants set up a sheriff's deed executed to *Elizabeth F. Weaver,* in pursuance of a sale upon an execution issued on a judgment rendered September 4th, 1862, in said district court, against Noble Carithers; and also a tax-deed issued to *John T. Weaver,* upon sale for non-payment of taxes for the year 1862. The plaintiff, as against these deeds, claimed that at the time of the rendition of the judgment and the sale on execution, the law of June 4, 1861, (ch. 171, Comp. Laws, 1862,) in regard to "redemption" was in force, and that within two years from the day of sale he redeemed the

property, and also, that the sale was void because the property was sold for less than two-thirds of the appraisement, and for other reasons.  Further, he claimed that the tax deed was void on its face; but even if not, was in fact void because the defendant who obtained the tax title was under obligation by contract with the plaintiff at the time to pay the taxes.

The case was tried before a jury.  The deed from Noble Carithers to the plaintiff is dated and was recorded Sept. 29th, 1862; the consideration expressed therein is, "natural love and affection," and "one dollar."  To impeach the plaintiff's title, and to support their claim under the sheriff's sale to *Elizabeth F. Weaver*, the defendants offered evidence (which is stated in the opinion of the court,) to show that plaintiff was estopped from any right of redemption.  Defendants also gave in evidence the tax deed to *John T. Weaver*, dated in May, 1865, and recorded June 10, 1865, to defeat which, plaintiff offered evidence showing that defendants went into possession of the property as his tenants, in October, 1862, under an agreement to pay all taxes, and that such possession had been continued down to the commencement of this action, March 4th, 1870.  Other facts are stated in the opinion.

The plaintiff asked the following instructions, which the court refused to give, and plaintiff excepted:

" If Mrs. Elizabeth F. Weaver's claim has been satisfied by a tender of the purchase money and interest, she has no legal right to complain of plaintiff's deed from Noble Carithers for want of consideration or good faith.

" It is a general rule of law that one in possession of premises and enjoying the fruits thereof as a tenant, cannot acquire a valid tax title to the premises, because it was the duty of the occupant to pay the taxes.

" If John T. Weaver stood in the relation of an agent to care for the premises, or of a tenant to plaintiff or his

grantor, then Weaver is not in a position to avail himself of a tax deed on the premises, be the tax deed ever so regular, because under such state of facts it would be a fraud upon plaintiff."

At the request of the defendants the court gave the following instructions, to all of which the plaintiff excepted:

" 1. If they find that John, T. Weaver went into possession of the lots October 1st, 1862, as the tenant of Noble Carithers, and shall further find that such tenancy closed at or about the time of the sheriff's sale to Elizabeth F. Weaver, (March 30, 1863,) then and in that case there was no legal barrier to his purchasing said premises, and acquiring title thereto at tax sale.

" 2. If the jury shall find that John T. Weaver, in November, 1863, took and received an assignment from the county of the tax certificate of sale of the property in controversy, and in May, 1865, said Weaver took and received a tax deed thereon from the county clerk of said county, executed and acknowledged in substantial conformity to law, and that such deed was duly recorded on the 10th day of June, 1865, and that this action was not commenced until March 4, 1870, the plaintiff is barred by the statute, and the jury must find for the defendants.

" 3. If the premises in controversy were occupied by Noble Carithers as a homestead at the date of his deed to plaintiff, (Sept. 29th, 1862,) and Nancy Carithers, wife of said Noble, did not join in such deed, then said deed was null, and conveyed no title to plaintiff, and the verdict must be for the defendants.

" 4. If the jury believe from the evidence that the plaintiff at or before the sheriff's sale urged and advised the defendants to purchase said property, and that the plaintiff in so doing said that he never intended to use the deed he had obtained from his father to disturb them in their possession, and if the jury further believe that the defendants were in anywise influenced and induced to purchase the property in consequence of such declarations by plaintiff, they must find for defendants.

" 5. If the jury believe from the evidence that the deed from Noble Carithers to plaintiff was made without consideration, for the purpose of defrauding *Nancy*

Carithers, the wife of said *Noble Carithers*, then such conveyance was void and conveyed no title to plaintiff."

The material parts of the general charge of the district court will be found in the opinion. The verdict and judgment were for the defendants; and the plaintiff now brings the record here for review.

*A. Smith Devenney,* for plaintiff in error:

1. At the time of the rendition of the judgment and sale of the premises, the plaintiff's grantor was entitled to a redemption within two years from the day of the sale. Ch. 171, Comp. Laws, 1862, act of June 4, 1861.

The plaintiff, by the deed to him, became the " successor in interest " of his father; and before the expiration of one year he paid to the sheriff the amount of the sale and interest thereon. The sheriff accepted it as payment in full, and tendered it to defendants, who refused it on the ground that plaintiff was not entitled to redeem. Such payment and tender were sufficient, and operated as a redemption. They discharged the lien: § 5, ch. 171, Comp. L. 1862; 16 Iowa, 397; 14 Mass., 103; 27 Ill., 93; 18 Wis., 45; 13 Mich., 303; 21 Wend., 457, 461.

2. After the redemption by plaintiff, the defendants had no interest in virtue of the sheriff's sale. They cannot attack the deed of plaintiff from the judgment debtor, Noble Carithers. If the said deed is voluntary and without consideration, it can only be questioned and avoided by some person having clear equities against it, superior to the grantee. 18 Mich., 196; 15 Iowa, 329; 2 Story on Eq. Jur., §§ 1196, 1197, 1198, 1200, 1201; Hill on Tr., 3 Am. Ed., 163.

And such deed is good and valid as to all persons, except existing creditors whose claims are unsatisfied.

8

2 Penn. St., 38; 15 Iowa, 329; 17 Conn., 492; 25 Maine, 317; 4 Wis., 268; 5 Md., 44; 1 Humph., 469.

3. The defendants entered into possession of the premises in the capacity of agent and tenant to the plaintiff, and agreeing to care for the property and pay a nominal rent therefor. The rule of law, that a person coming into possession of lands and tenements under the agreement of lease or license of another, cannot be permitted to deny the title of the latter when called upon to surrender, is of almost universal application. Whether the tenant or person was there for a long or short time is immaterial. 19 Wis., 424; 13 Mass., 471; 25 Wendell, 389; 15 N. Y., 374; Tyler on Eject., 165; 17 Mich., 373; 18 N. H., 225; Adams on Eject., 217, notes 4 and 5; 3 Am. Lead. Cases, 60; 1 Dana, 14; 14 Mass., 93; 7 Halsted, 42; 7 Moore, 539; 5 B. Mon., 450.

If the defendants, or either of them, desire to dispute their landlord's title, they must first surrender possession of the premises. 21 Wis., 266; 4 Johns., 202; 3 Barb. Ch., 528; 1 Washb. on Real Prop., 550; 31 Mo., 492; and this rule applies as well between the tenant and grantee of the lessor, as between the tenant and lessor himself: 25 Iowa, 575; 16 Wis., 41; 12 Pick., 125; 7 N. Y., 523.

A tenant cannot, by any act of his own merely, change the tenure so as to enable himself to hold against his landlord. 3 McLean, 431; 9 Yerger, 86; 13 Johns., 240; 35 Georgia, 139; 4 Dev. & Bat., 300; 1 Doug., 179; 21 Wis., 264, 267.

4. As to the *tax deed* taken and now held and claimed under by one of defendants, John T. Weaver, we submit: That, he having obtained possession of the premises originally from the agent of plaintiff, for the pur-

pose of caring for and protecting the same, at a mere nominal rent, and, while being in that " confidential relation " to plaintiff, obtained the aforesaid tax deed, such deed is a fraud upon plaintiff, and the title, if any, thereby acquired, enures to the benefit of plaintiff.  32 Ill., 50, 53, 367; 14 Wis., 247; 5 Watts & Serg., 447; Black. Tax Titles, ch. 24, p. 393, 396, 402, *et seq.;* 2 Wash. Real Prop., p. 462, § 10, and note 7; Tyler on Eject., 131; 8 Florida, 307; 2 A. K. Marsh., 242; 7 Wheat, 545; 1 Aikens, 306; 14 Vermont, 532; 14 Peters, 294; 18 Mich., 12, 22; 10 N. Y., 402; 36 Mo., 163; 3 Barb. Ch., 528; 2 Story's Eq., § 316.

The evidence discloses that said *Weaver agreed to pay the taxes on the premises.*  He took possession in September or October, 1862.  Taxes on the premises for that year became due on the 1st of November.  The sale for taxes was made in May, 1863.  Weaver took the tax deed in 1865.  He not having *attorned* the premises to the purchaser at the sheriff's sale thereof, and not having *surrendered* to his landlord or principal, he was plaintiff's tenant in 1865; when he took the deed, and so remained at the time this action was brought, notwithstanding his denial of plaintiff's rights.  Ch. 131, § 8, Comp. Laws 1862; 31 Wis., 62, 63.

Again : Defendant John T. Weaver is not in a position to avail himself of the tax deed, *be it ever so regular,* for the reason that he has shown by the record to have been in possession of the premises at the time of the sale and tax deed as the *tenant of plaintiff,* and to permit him to avail himself thereof, would be a *fraud* upon plaintiff, and contrary to all justice or fairness.  It being a fraud, it *vitiates* the deed.  Tyler on Eject., 113 ; 1 Story's Eq., §§ 322, 323; Taylor's Land. and Ten., p. 514, § 705; 22 Wis., 43, 175; 20 Iowa, 56; 13 Ill., 708; 33 Cal., 408;

Carithers v. Weaver.

2 Johns., 30; 13 Mass., 471; 5 Johns. Ch., 388; 1 Denio, 113; 10 Ohio, 158; 8 Mich., 263; 14 Peters, 294; 26 Iowa, 96; 36 Mo., 163; 35 Penn. St., 9.

Defendant was indebted to plaintiff for rent when he purchased the tax certificate. He bought with plaintiff's money. 32 Ill., 50, 53.

It is a general rule, that one in possession of premises, and enjoying the fruits thereof, cannot acquire a valid tax title to the premises, because it was his duty to pay the taxes. 13 Mich., 292; 2 Watts, 495; 13 Penna., 322; 7 N. Y., 523; 13 How., 18; 22 Wis., 176; 11 Iredell, 624; 14 Ver., 532; 10 Ohio, 152; 22 Iowa, 53; Black. on Tax titles, 470-2.

The statute of limitation does not run in favor of a tax deed *fraudulently* obtained. Fraud vitiates everything it touches. 22 Wis., 43; 26 Ill., 508; 18 Mich., 145. And see: 2 Peters, 241; 30 Ill., 280; 5 Cond. U. S., 673. " The source being corrupt, the stream cannot be pure."

That which is void in its inception cannot accquire validity by the lapse of time. Broom's Legal Max., 136, *et seq.; Taylor v. Miles*, 5 Kas., 498; *Crocker v. Bellangee*, 6 Wis., 645.

5. As to the estoppel attempted to be set up by defendants, it is not important in the case, and the jury so considered it, as the evidence was balanced, J. T. Weaver *affirming* it, and the plaintiff as strongly *denying*.

The whole matter relied on as an estoppel is *immaterial*. 38 Illinois, 456; 18 Ala., 182; 20 Iowa, 393; 31 N. Y., 246.

One cannot be barred by an estoppel of his right to real estate, only by deed or record; not by an agreement in parol. 17 Iowa, 81; 26 Maine, 384; 18 Johns., 490; 4 Martin (La.), 475; 11 Mass., 27; 48 Penn. St., 148;

8 Blackf., 24; 20 N. Y., 170; 18 Mo., 486; 2 Dev. & Bat., 125; 3 B. Mon., 175; 21 Indiana, 437.

6. The third instruction asked by the defendants, and given by the court, was clearly *erroneous;* it should have been refused, if for no other reason, than it was *inapplicable* to the case. The homestead question was not raised by the pleadings, nor was any evidence offered on the trial in relation thereto.

*Holmes & Dean,* for defendants in error :

1. If there was no agreement on the part of defendants to pay the taxes on the property occupied by them as tenants, they were not prohibited, when the tenancy had ceased, from taking from the county an assignment of the tax-certificate of sale of said property, and in due time a deed by virtue of such sale for taxes which had been assessed against the property during the existence of the tenancy. *Blakely v. Bestor,* 13 Illinois, 708; Blackwell on Tax Titles, 400; *Bettian v. Budd,* 17 Arkansas, 546; *Ferguson v. Etten,* 21 Arkansas, 160.

2. The action is barred. The tax deed, with all its defects is sufficient, when put on record, to put the statute in motion.

3. The plaintiff is estopped from bringing this action by reason of the representations made by him at the sheriff's sale. *Cook v. Finkle, et al.,* 9 Mich., 131; *Smiley v. Wright,* 2 Ohio, 505; 2 Smith's Leading Cases, 660-1.

4. The sale by Noble Carithers so his son, the plaintiff, of property in controversy was to defraud his wife, (the judgment creditor,) participated in by plaintiff. He cannot recover against one who has a better equity. Courts will not aid one in a fraudulent design in the consummation of his fraudulent purpose.

The opinion of the court was delivered by

BREWER, J.: The record presents several questions for our consideration. The sale to Elizabeth F. Weaver was made March 30th, 1863, for $200. Within one year, and on the 29th of March, 1864, plaintiff paid to the sheriff who made the sale, and who was still sheriff, for the redemption of said property, $220, the amount for which the property was sold, and ten per cent. interest. The sheriff on the same day tendered the amount to the purchaser, which was refused. A tender of the money is, by the terms of the law, made equivalent to payment. Also payment might be made to the purchaser or for him to the officer making the sale: (§ 5, ch. 171, Comp. L., p. 771.) The redemption might be made by the judgment-debtor or his successor in interest; (§ 2, same chapter.) Here the party seeking redemption claimed title by virtue of a deed from Noble Carithers, the judgment-debtor, made intermediate the date of the judgment and the day of the sale. He was therefore the "successor in interest of the judgment-debtor," and entitled to redeem. Having performed all that the law required for the redemption of the property, all interest therein which the purchaser acquired by the sale ceased. This seems to have been conceded on the trial below, (except so far as it is affected by the question presented in the fourth instruction given at the instance of defendants, of which hereafter,) and is referred to, only for the sake of preparing the way to the question we shall now consider. There was some testimony offered upon the trial for the purpose of showing that the deed from Noble Carithers to plaintiff was without consideration, and made for the purpose of defrauding the wife of the grantor. Plaintiff asked the court to instruct the jury, that, "If Mrs.

Weaver's claim has been satisfied by a tender of the purchase money and interest, she has no legal right to complain of plaintiff's deed from Noble Carithers for want of consideration or good faith," which instruction was refused by the court, and the refusal excepted to. The court also on application of defendants, gave the following instruction: " 5th:–If the jury believe from the evidence that the deed from Noble Carithers to plaintiff was made without consideration for the purpose of defrauding Nancy Carithers, the wife of said Noble Carithers, then such conveyance was void and conveyed no title to plaintiff," to the giving of which instruction plaintiff excepted.

Was there error in this? Who can question the validity of a deed alleged to have been executed without consideration and with a fraudulent intent? That fraud

1. DEED; who can question its validity. in a deed may be shown, and, being shown, that it avoids the deed, is not a rule of universal application. Where both parties to the deed are privy to the fraud, the law leaves them where it finds them, and neither party can secure its aid to change the interests and relations created thereby. Where the grantor alone acts with a fraudulent intent, he is estopped thereafter from setting up such fraud in avoidance of the deed; nor can one claiming under him by descent, or deed subsequent thereto, avoid such conveyance on account of the fraud; he has no greater rights than his ancestor or grantor; 10 Conn., 69; 17 Conn., 492; 15 Mich., 94; 18 Mich; 196; 7 Blackf., 66. Of course, one who is without interest or equity in the conveyance, or the property conveyed, a mere stranger, cannot be heard to say there is fraud in the conveyance. In the plain and homely language of the day, " it is none of his business." Who then may question the validity of a deed alleged to

have been executed with a fraudulent intent? Plainly, he who is injured by the fraud; he who has superior equities in the property conveyed. A deed, fraudulent as against creditors may be set aside by those creditors. Apply these principles to this case: The only interest defendant Elizabeth F. Weaver ever had in the property, as appears from the record, was that acquired by the sale on execution of March 30th, 1863. But that interest, as we have seen, was wholly destroyed by the redemption of March 29th, 1864. Thenceforth she had no interest in the property, no equities to enforce, was in fact a mere stranger. She therefore was in no position to question the validity of plaintiff's conveyance. The interest which the other defendant had in the premises was created by a tax deed, resulting from the non-payment of the taxes for the year 1862. Plaintiff's deed was executed Sept. 29th, 1862. The lien for taxes attached November 1st, 1862. The sale for non-payment was on May 12th, 1863, and Johnson county was the purchaser. November 7th, 1863, the certificate of sale was assigned to defendant John T. Weaver; May 19th, 1865, the tax deed was executed. Now, whatever may have been the consideration or intention of the deed to plaintiff, it in nowise affected the title which was developing through the tax proceeding. That title was developing in antagonism to the title by deed. No matter who held that earlier title, no matter through how many parties it passed, no matter what the consideration or purpose of the varied conveyances, the title by the tax proceedings moved steadily on to its completion. In short, he who is building up a tax title cannot be hindered by any conveyances on the part of those holding the earlier title, made with or without consideration, with or without fraudulent intent. More than that, the conveyance to plaintiff was long prior to the time

·defendant acquired any interest by virtue of the tax pro-
·ceedings, prior indeed to the time when the lien for taxes
·attached.    Surely, one claiming under a tax title accru-
·ing long subsequent to a conveyance has no such superior
·equities that he can question the consideration or good
·faith thereof.    But it may be said that for this error the
·judgment ought not to be reversed, because from the
record it appears that defendant John T. Weaver holds
possession under a tax title, which by virtue of the statute
·of limitations has passed beyond question, and that there-
·fore both verdict and judgment were as matter of law
·right.    We cannot say upon what instruction or refusal
·to instruct the case hinged in the minds of the jury; per-
haps upon those wherein we have just indicated the error.

But another question is presented in reference to the
tax deed.    It was claimed by the plaintiff, and testimony

2. Tax Title;
who cannot
acquire.

was offered by him for the purpose of show-
ing, that defendant John T. Weaver entered
into possession of these premises as his tenant, and that
the terms of the lease were that said defendant should
keep the property in repair and pay the taxes; and that
while this lease was continuing the taxes became due and
payable, from a failure to pay which the defendant's tax
deed arose.    There was contrary testimony ; but by all
the evidence a question of fact was presented for the jury
to decide.    Suppose the jury were to find that the facts
were as claimed by plaintiff, how would they affect the
tax title set up by defendant?    Being a tenant in pos-
session, under contract to pay the taxes as part rent, he
was an agent to pay taxes with funds provided therefor.
Appropriating those funds in breach of that trust, he
claims thereby to have divested the real owner of his
property.    Neglecting the duty which by contract he had
assumed, he grounds his title on his own misconduct.

Not content with defrauding the owner out of that portion of the rent he promised to pay in such manner, he claims by that very fraud to have wrested from him the entire property rented. As agent, with funds of his principal to protect that principal's title, he uses those funds to purchase a title for himself. Will such a transaction stand? That it is fraudulent as against the principal and owner, is clear. That such principal and owner can take advantage of the fraud, is evident from the principles heretofore stated; and that such a fraud will vitiate and avoid the title seems equally clear. Chief Justice WAGNER, in *Grumley v. Webb*, 44 Mo., 451, says: "Nothing is better settled than that an agent or a trustee or any person acting in a fiduciary capacity, cannot speculate for his private gain with the subject-matter committed to his care, to the prejudice of his principal. He cannot be allowed to purchase an interest in property where he has a duty to perform which is inconsistent with the character of purchaser." Chief Justice SANDERSON, in *Moss v. Shear*, 25 Cal., 45, uses this language: "If the defendant was under any legal or moral obligation to pay the taxes, he could not, by neglecting to pay the same, and allowing the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased at the sale. Otherwise he would be allowed to gain an advantage from his own fraud or negligence in failing to pay the taxes. This the law does not permit, either directly or indirectly." In Blackwell on Tax Titles, page 400, appear these words: "One in possession of a tract of land at the date of the assessment, may purchase at the sale, unless it appears that he was bound to pay the taxes; in which case he can acquire no title by his purchase." Also, on page

396: "Also, where an agent intrusted with funds to pay the taxes, violated his trust, and, by a similar arrangement with the purchaser, permitting a sale. These and positive frauds of similar character, of course render the sale void." And on page 401: "Nor can an agent whose duty it is to pay the taxes, become the purchaser of his principal's land at such a sale." See also sustaining these views: 32 Ill., 50; 22 N. Y., 343; 3 Sumner, 476; 36 Cal., 135; 14 Wis., 247; 22 Wis., 175; 5 B. Monroe, 458; 32 Maine, 305. The fact that a tax deed thus acquired may be regular on its face, or that all the requirements of the statute have been strictly complied with, avails nothing. The objection goes not to the proceedings, but to the power of the party to take the title. It is not a defect of form, but a disqualification of person. Nothing passes to him, because he is not in a position to take anything. Nor would the two-years statute of limitation assist. Such a tax deed would be void, and a void deed never starts the statute to running. *Taylor v. Miles*, 5 Kas., 498; 3 Sumner, 476.

3. Tax Deed; when void, statute of limitations.

Nor would the fact that the party acquired no interest in the tax proceedings till after the termination of his lease or agency change the case, if during the lease or agency the taxes became due and payable and he then neglected to pay them. The instruction given by the court of his own motion ignores this principle entirely. It reads thus:

"The legal effect of the tax-deed in evidence was to pass the entire title to John T. Weaver; and if the jury believe from the evidence that such deed was legally recorded in the office of register of deeds for Johnson county, more than two years previous to the commencement of this suit, the plaintiff is barred, and has no right to maintain a suit to recover possession of said premises."

With only this instruction before them, the jury would have little difficulty in disposing of the case, as the tax deed had indisputably been on record over three years. True, this instruction was qualified by the sixth instruction given at the request of the plaintiff, as follows: "If either or both defendants took possession of the premises with a view to taking care of the same, and thereby obtained the confidence of the plaintiff, or his grantor, the law will not permit the defendants to acquire any title to the premises while in that confidential relation." But even with this qualification, the true principle is not fully presented to the jury, because their attention is not called to the effect of a failure to pay the taxes while that confidential relation continues, and the acquisition of a title derived therefrom subsequent to the termination of such relation. The first and second instructions given at the instance of defendants are open to the same criticism as that one given by the court of his own motion.

Another question in the record is presented by the fourth instruction given at the instance of defendants, to which we have heretofore referred. The defendant, John T. Weaver, testified that, acting as agent for his co-defendant, he bid off the property at the sheriff's sale; that prior thereto in several conversations he was advised by plaintiff to purchase, as he (Weaver) was in possession and would not lose much; and upon his replying that plaintiff had better buy, as he (plaintiff,) had a deed from his father, the judgment-debtor was told that the deed was only to prevent the old lady (Nancy Carithers) from getting the property, and that if defendant bought he should not be disturbed; and that he relied and acted on these statements in making the purchase. Upon this testimony the court gave this instruction: "4.—If the jury believe from the evidence that

4. ESTOPPEL; rule explained.

the plaintiff at or before the sheriff's sale urged and advised the defendant to purchase said property, and that the plaintiff, in so doing said that he never intended to use the deed he had obtained from his father to disturb them in their possession, and if the jury further believe that the defendants were in anywise influenced and induced to purchase the property in consequence of such declarations by plaintiff, they must find for defendant." In this also, we think, was error. Estoppels *in pais* are upheld to prevent gross injustice in cases where one party, having rights in property, by representations or conduct in reference thereto, fraudulently induces another to part with value for that property, and thereafter insists on those rights to deprive the latter of both value and property. But where the latter party loses nothing by permitting the former to assert his legal rights, the reason for upholding estoppels fails. In this case there was no concealment by the plaintiff of any claim, or any fact. The defendant knew at the time of his purchase of the existence of a deed from plaintiff's father, the judgment-debtor, to plaintiff; knew that plaintiff by reason thereof had the right to redeem at any time within two years; knew what interest he could purchase and was purchasing in the property; paid the least amount he could pay to acquire that interest; knew that before he could be deprived of that interest he was entitled to receive, as he was in fact afterward offered, all he paid with large interest up to the time of redemption. Surely, he cannot claim to have been in any way mislead as to the facts. But he says plaintiff promised not to redeem. What consideration was there for the promise? The plaintiff received nothing—the defendant parted with nothing, for that promise. He paid for an interest in the land, and paid the least amount for which that interest could be

sold; he obtained that interest, which was full equivalent for the money he paid. It was therefore a promise without consideration, and binding on no one.

In regard to the third instruction given at the instance of the defendants, that in reference to a conveyance of the homestead, we have looked through the record carefully and see no testimony which would make an such instructions applicable to the case.

For these reasons the judgment of the court below must be reversed, and the case remanded for further proceedings.

All the Justices concurring.