WILLIAM H. DUFFITT, *et al.*, v. ELLEN TUHAN.

1. TITLE, *When Not Acquired by Tenant.* Where it is the duty of a person in the actual possession of real estate to pay the taxes levied thereon and payable during such possession, he cannot acquire title to the land as against the owner thereof, by the purchase of the property at a tax sale; and a tax deed issued upon such a sale would be void, and not start the statute of limitations to running.

2. OWNER'S TITLE; *Tenant's Purchase at Tax Sale.* Where a person with the consent of the owner of real estate, but without any agreement as to

the payment of rent or taxes, goes into the actual possession of it and occupies a house thereon built by another party for his benefit, and continues in the possession of the premises for several years without paying or offering to pay rent therefor, and during all such time receives all the benefits of the real estate, such person cannot divest the owner of the property by purchasing it at a tax sale for taxes levied and payable while he was in the actual occupancy thereof.

3. TENANT'S TITLE, *Fraudulent; Limitation of Action.* Where a tenant in the actual possession of real estate fraudulently acquires a title thereto, the statute of limitations applicable to bar his landlord from maintaining a suit to set aside the tax title, is the one for relief on the ground of fraud; but in such case the statute does not begin to run until the fraud is discovered, and for this purpose there is no constructive discovery. If the tenant fraudulently takes the deed in his own name and puts it on record, it is not notice to his landlord which would set the statute running that would bar him from an action for relief against the fraud; the landlord and his grantees would be entitled to the full time limited by law after the actual discovery thereof.

## *Error from Leavenworth District Court.*

ACTION in the nature of ejectment, brought by *Ellen Tuhan* against *W. H. Duffitt*, to recover the possession of a certain lot in Leavenworth city. Trial had at the March Term, 1881, of the court, without a jury; second trial had at the September Term, 1881, of the district court, without a jury. The trial judge made and filed the following findings of fact:

"1. In 1865 the plaintiff, with the consent of the then owner, but without any agreement as to payment of rent or taxes, went into possession of the premises in controversy, and occupied a house built thereon for her by the city of Leavenworth, until 1876, when she left the same, and the house thereon was removed from the premises.

"2. Said premises remained vacant until 1880, when a few days before the commencement of this suit the defendants took possession thereof, and are still in possession.

"3. Soon after the defendants took possession they erected a brick building thereon forty feet long, twenty-three feet wide and one story high, having purchased the title of R. D. Callaghan, who held by conveyance from Jeremiah Clark, who had the patent title from the government.

"4. The plaintiff never paid any rent for the premises.

"5. On the 29th day of April, 1870, the city of Leavenworth, by its clerk, made a tax deed to the plaintiff for the

premises, which deed was in due form, duly acknowledged, and was recorded in the office of the register of deeds, in Leavenworth county, on the 30th day of April, 1870. This deed was made in pursuance of a sale made by the city, on the 4th day of May, 1868, for the taxes levied on said lot for 1867, for the sum of $7.36.

"6. On the 10th day of May, 1872, the county clerk of Leavenworth county made a tax deed to the plaintiff for said premises, in pursuance of the tax sale made by the treasurer of said county at an adjourned sale on the 8th day of May, 1869, for the taxes of 1868, which deed was in due form, duly acknowledged and witnessed, was for the consideration of $15, and was duly recorded in the office of the register of deeds in said county, on the 11th day of May, 1872.

"7. On the 10th day of May, 1872, the city clerk of Leavenworth city made a tax deed to the plaintiff for said premises, in pursuance of the tax sale made by said city on the 3d day of March, 1870, for the taxes of 1869, for the sum of $10, which deed is in due form, under the seal of the city, and was duly recorded in the office of the register of deeds of said county, on the 11th day of May, 1872.

"8. On the 5th day of October, 1880, the city clerk of the city of Leavenworth made a tax deed to the plaintiff for said premises, for the taxes of 1875, which deed is in due form of law, for the consideration of $5.52, was duly acknowledged, and recorded in the office of register of deeds of said county, on the 5th day of October, 1880.

"9. Before the defendants erected any building on the premises, the plaintiff notified them of her claim to the premises.

"10. The real name of the plaintiff is Ellen Burke, Burke being her husband's name, but for the past five or six years she has gone by the name of Ellen Tuhan — Tuhan having been her name before she was married to Burke."

And thereon, the trial judge made the following conclusions of law:

"1. The first three tax deeds having been on record, and the plaintiff in possession for more than five years after the recording thereof, the tax deed, not being void upon its face, is incontestable.

"2. The plaintiff is entitled to a judgment for the possession of the premises."

Judgment was entered in favor of *Tuhan*, and *Duffitt* brings the case to this court.

*H. T. Green,* and *W. Green,* for plaintiffs in error.

*Stillings & Stillings,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Defendant in error (plaintiff below) claims that she is the owner of the lot in controversy by virtue of the several tax deeds set forth in the findings of fact, and the actual possession of the premises thereunder for such length of time that the statute of limitations has run, and therefore that the plaintiffs in error (defendants below), holding under the owner of the patent title, have no rights whatever to the lot. The defendant in error, with the consent of the original owner, in 1865 went into possession of the premises, and occupied a house which was built for her thereon by the city of Leavenworth, until 1876, when she left. All of the tax deeds were issued for taxes due and payable during the time that she was in the actual possession of the premises. The deed of April 29, 1870, embraces the taxes levied for 1867; the city deed of May 10, 1872, embraces the taxes levied for 1869; the county deed of May, 1872, embraces the taxes levied for the year 1868 and the subsequent taxes of the years 1869 and 1870; the tax deed of October 5, 1880, embraces the taxes levied for the year 1875. The important question therefore is, in our view, not whether these several tax deeds are regular and valid in form, but whether the holder thereof is estopped from setting up title thus acquired. This involves the question whether defendant in error was precluded from becoming a purchaser of the lot at the tax sale for taxes levied and payable during her actual occupation of it. If her relation as occupant of the lot with the consent of the owner, without agreement as to rent or taxes, and receiving all the benefits of its use and pay-
ing no rent therefor, forbade her divesting the owner of his property by the purchase of it at a tax sale for taxes levied and payable while she was in the actual occupancy thereof, she grounds her title on her own

1. Title, when
not acquired
by tenant.

misconduct, and such title would be fraudulent as against the owner. If a tax deed is acquired fraudulently, although it is regular on its face, and all the requirements of the statute have been strictly complied with so far as the tax proceedings are concerned, that avails not. Nothing passes to the fraudulent holder, because such holder is not in a position to take anything, and a tax deed that is fraudulent as against the owner of the premises is void, and a void deed never starts the statute of limitations relating to tax titles to running. (*Carithers v. Weaver*, 7 Kas. 110; *Taylor v. Miles*, 5 Kas. 498.) The statute of limitations as to lands sold for taxes, applicable to persons in general, has no application as against the original owner where the person purchasing the tax title is precluded by his relation from becoming the purchaser. (*McMahon v. McGraw*, 26 Wis. 614; Cooley on Taxation, 345.) In *Carithers v. Weaver*, supra, it was held by this court that a tax deed issued to a tenant or lessee who had contracted to pay the taxes for which the deed was issued was absolutely void; and it was further held therein that the fact that the party acquired no interest in the tax proceeding until after the termination of the lease would not change the rule, if, during the lease or agency, the taxes became due and payable and the tenant neglected to pay them. In *Weichselbaum v. Curlett*, 20 Kas. 709, we held that a tenant under no obligation to pay taxes might purchase property in his possession at a tax sale made during his term. The former case was decided upon the principle that the tenant was under legal obligation by his contract to pay the taxes, and he could not, by neglecting to pay the same and allowing the land to be sold in consequence of such neglect, obtain a title by purchasing at the tax sale. The latter case was decided upon the principle that as the tenant had agreed to pay rent for the premises in his possession, and had properly paid all the rent prior to the tax sale, he was at the time under no obligation to his landlord to pay the taxes or discharge the property from the lien thereof. This case differs from the cases just cited, as the occupant went into the possession of the lot

with the consent of the owner without any agreement as to the payment of rent or taxes. We interpret the findings of fact to mean that there was nothing said about rent at the time the original owner consented for plaintiff below to take possession, and this interpretation is sustained by the evidence of Callaghan, who testified: "I owned the lot in controversy about 1865, when H. T. Green applied to me for permission to erect a house for the plaintiff and her children on the lot. I learned she was very poor, and I consented she might put a house on the lot. There was nothing said about rent, or who should pay the taxes. I permitted the plaintiff to remain on the lot as long as she wanted to. She moved the shanty and left the lot about 1876. From that time until I sold it to the defendants, the lot was vacant. Since they purchased the lot of me, the defendants took possession and built a brick house thereon."

Had the trial court accepted the evidence of the plaintiff below as wholly truthful, we think the finding would have been that she went into possession of the premises with the consent of the owner under an agreement that she was not to pay any rent. With our interpretation of the findings of fact, the occupant was under an implied obligation to pay rent. Continuing in the possession of the premises for about eleven years, with a house erected thereon for her own use, which added to the valuation of the premises, and thereby increased its assessed value, and also the taxes levied annually thereon, it ought not to be assumed that having paid no rent, she would also neglect to pay the taxes and thereby risk the hazard of dispossession by a tax sale. Her landlord could hardly suppose that being permitted to occupy the premises without the collection of the rent, she would neglect the duty of protecting her own possession by failing to pay the taxes, and then thereafter attempt to cut off his title by buying in the land at a tax sale. Taking all the circumstances of this case together, we think that the tenant acquired no rights as against the original owner or his grantees by neglecting to pay the taxes levied upon the prem-

2. Owner's title; tenant's purchase at tax sale.

ises during her actual occupancy thereof, and thereafter pur-
chasing such premises at tax sales. At least, while thus oc-
cupying the premises, if during such occupancy the taxes
became due and payable and she neglected to pay them, as
against the party who put her into possession and his grantees
she ought in all justice to be precluded from setting up a
title acquired upon the sales on defaults in the payment of the
taxes while the premises were so occupied by herself. The
aggregate of the taxes represented by the various tax deeds
is only $64.85, and yet the holder of these titles insists that
as she occupied the premises with the consent of the owner
thereof, without any agreement as to the payment of rent or
taxes thereon, she has acquired by the payment of this small
sum, not only absolute title to the premises, but is also the
owner of all the improvements thereon, including the brick
building recently constructed by the grantees of the original
owner. It would cause a shock to the moral sense, if the law
were to permit such a result, and we cannot consent to the
establishment of any such doctrine. Ingratitude thus exhib-
ited is not commendable, and when it attempts to call to its
protection judicial support, it deservedly calls in vain. As
the tenant paid no rent during all the ten or eleven years she
occupied the lot, the most she can in common honesty de-
mand is to offset the taxes paid by her against the value of
the use of the premises while in her exclusive possession.

Owing to her disqualification to take title, neither the
statute of limitations of 1868 nor 1876 applies. But coun-
sel for defendant in error contend that even if there had
been upon her part an obligation to pay the taxes, and instead
of paying them she obtained the deeds to herself in fraud
of the rights of the owner, that such fraud is now beyond
his reach or inquiry of his grantees, as a suit to set aside the
deeds has long since been barred by the general limitation
law.

In our view of this case, the only statute of limitations
applicable is the one for relief on the ground of fraud. The
statute requires such an action to be brought within two

3. Tenant's title, years, but further provides that the cause of ac-
fraudulent;
limitation of tion in such case shall not be deemed to have ac-
action. crued until the discovery of the fraud.    In a case
like this, the statute does not begin to run until the fraud is
discovered.    For this purpose there is no constructive dis-
covery.    If an agent or tenant should fraudulently allow the
lands of his principal or landlord to be sold for taxes and
take the deed himself and put it on record, this would not
be notice to the principal or landlord that would set running
the statute that would bar him from an action for relief
against the fraud.    (*McMahon v. McGraw*, 26 Wis. 622.)
There is no finding that the tenant ever notified her landlord
or any of his grantees of her claims under her alleged tax
titles, until the plaintiffs in error were erecting a building on
the premises.    This was in the year 1880, and only a few
months prior to the commencement of the action in the court
below.    The defendant in error therefore is not protected by
the general limitation law.

The judgment of the district court must be reversed, and
the case remanded with direction to the court below to enter
judgment upon the findings of fact in favor of plaintiffs in
error.

All the Justices concurring.